*S. B. Gookins*, for the appellant.

---

## Taylor and Others *v.* Conner and Others.

A testator, in disposing of all his estate, after directing that his debts should be collected, and that after paying his indebtedness, the residue should be equally divided among his daughters, specifying them, "gave and bequeathed unto his sons," mentioning them by name, all his real estate, consisting, &c., "to be equally divided between them *or* their heirs." When the will was made, *A.* and *B.*, two of the testator's sons mentioned in the will, were dead, and the testator knew the fact. There was no residuary clause in the will relating to the realty. *Held*, that the testator's intention was to give to the heirs, being in this case the children, of *A.* and *B.*, the shares that would have gone to their fathers respectively, had they been living.

The Probate Courts, in 1831, had no jurisdiction of proceedings for partition. Such jurisdiction was not conferred until 1833.

Where a Court has no jurisdiction of the subject matter of a suit, its proceedings are void.

Where, in the case of non-resident defendants, the statute requires that notice shall be given by publication for a particular period, &c., and notice not having been published the period prescribed, the Court proceeds to take jurisdiction of the persons of such defendants and to render a decree affecting their interests, the decree, as to them, is erroneous, at least, if not void.

The purchaser of real estate under a void judicial sale, must, in a proceeding to recover back the purchase-money with interest, account for the rents and profits received by him while in possession of the premises.

*Friday,
November 30.*

APPEAL from the *Hamilton* Circuit Court.

PERKINS, J.—Bill for an injunction to restrain the prosecution of an ejectment suit. The material facts in the case follow.

In 1829, *George Dale*, being seized of certain lands, made his last will and testament, and, in 1830, died. The will reads:

" In the name of *God*, amen. I, *George Dale*, of the county of *Hamilton*, and state of *Indiana*, being of sound mind and memory, do make and publish this my last will and testament, to-wit:

"*First.* I direct that all of my debts be collected, and, after paying my debts, the residue be equally divided among my daughters, *Frances*, *Betsey*, *Hannah*, *Letty*, *Mary*, *Rebecca*, and *Nancy*.

" *Secondly.* I give and bequeath unto my sons, *George*, *Alexander*, *Joseph*, *John*, *Sydnor*, and *Samuel*, all my real estate, consisting of three quarter-sections of land lying in the county of *Hamilton*, and state of *Indiana*, and also a tract of land lying on the waters of the north fork of *Licking*, in the state of *Kentucky*, containing about one thousand acres, to be equally divided among them or their heirs.

" *Thirdly.* I give and bequeath unto my niece, *Edith Dale*, daughter of *Polly Gillam*, my bed and bedding; and, in case she should die without heirs, it is my request that the said bed and bedding should descend to my niece, *Minerva Dale*, daughter of my son, *John Dale*.

" I do appoint," &c., " my executor," &c.

At the time of the execution of the foregoing will, two of the sons of the testator, *Sydnor* and *George*, were dead, and known to be so by their father.

The will was duly proved.

In 1831, *John Dale*, one of the above-named devisees, filed his petition for partition in the *Hamilton* Probate Court, asking the appointment of commissioners to divide the lands in *Hamilton* county, in accordance with the terms of the will. Commissioners were appointed. They divided the lands into six parts, giving one to the heirs of *Sydnor*, and one to the heirs of *George Dale*, junior, deceased; "to the heirs and legal representatives of *Sydnor Dale*, the west half of the south-east quarter of section thirty, township nineteen, range five east; to the heirs, and legal representatives of *George Dale*, junior, the south half of the north-west quarter of section thirty-two, same township and range."

The Court confirmed the partition made by the commissioners.

In 1837, the same *John Dale*, on whose petition the foregoing partition was made, concluding that the devises to *Sydnor* and *George Dale*, junior, did not go to their heirs, but lapsed to the heirs in general, on account of said *Sydnor* and *George Dale*, junior, being dead at the date of the devises, again filed a petition in the *Hamilton* Probate Court, asking partition of the two half-quarter sections assigned to said heirs in the partition of 1831. He gave notice of the filing of his petition by three successive publications in the newspaper printed and published in *Hamilton* county, more than four weeks previous to the first day of the term of the Court at which his petition was presented.

The notice required by statute was, "at least four weeks, in some public newspaper in this state," previous to the term of the Court, &c. Act of *February* 1, 1831, continued in the code of 1838, p. 426.

The Court appointed commissioners, who reported the grounds not susceptible of division, &c., and the Court ordered them to he sold. At the sale, *William Conner* and

*Bicknel Cole* purchased the west half of the south-east quarter of section thirty, township nineteen, range five east, for the sum of 990 dollars, payable in nine and eighteen months, being the half-quarter section set off to the heirs of *Sydnor Dale* in the partition of 1831. *Cole* and *Conner* paid a part of the purchase-money, and a part remains unpaid, and they have received no deed, the matter standing unclosed upon the docket of the Probate Court.

In 1845, certain of the heirs of *Sydnor Dale*, having become of age, and believing they had a right to the land in question, under the will of *George Dale*, senior, commenced an ejectment against *Conner*, then in possession, to recover said half-quarter section; and *Conner* filed this bill to enjoin.

Answers and cross bills were filed, depositions taken, &c., and the Court finally decreed that the sale to *Conner* and *Cole* was void; that they were entitled to be refunded the moneys paid, with interest, and the Court ascertained the amounts due from the several persons concerned; that the ejectment suit should not be enjoined, &c.; but took no account of the rents and profits of the real estate while occupied by the purchasers.

Several questions arise upon this record. The first that we shall examine, relates to the construction of the will of *George Dale*, senior, deceased. That will, as we shall assume, disposes of all his property, though it does not, in terms, assert the fact, and no evidence, as should have been the case, removes the uncertainty. It expressly disposes of all his choses in action and his real estate, and an article of personal property besides. And if, as may be inferred, he was an aged man, who had survived his wife, and ceased to keep together a family and to follow any business, he would not probably have any other property than that named in his will.

The question upon the will is, what became of the two-sixths of the real estate nominally, it is contended, given to *Sydnor* and *George Dale*, junior, alone, who were dead at the time of the devise, and, of course, could not take?

Did they go to the heirs of *Sydnor* and *George*, junior, or did they lapse to the heirs in general?

Nov. Term, 1855.

TAYLOR
v.
CONNER.

They must have done one or the other, as there is no residuary clause in the will under which they could have passed to particular devisees. If it be true that the devise, by the terms of the will, was to *Sydnor* and *George*, junior, then, they being dead, and there being no residuary clause in the will, by the common law, the devise, being void, lapsed to the heirs generally, though, under our statute, since 1843, it might, perhaps, have gone to the heirs of the devisees. R. S. 1843, p. 489, sec. 23.—2 R. S. 1852, p. 313, sec. 13.

But was the devise to *Sydnor* and *George Dale*, junior? They were dead, and known to be so by the testator, and, hence, a devise to them would be void; and yet the testator was disposing of all his estate, and specifying the share he wished each of his children to have. By his will he gives to each of his living sons one undivided sixth of his real estate—not any specific piece of it. This seems to be the share that he designed those sons severally to have; and if they are not to be limited to that share, then the children of *Sydnor* and *George*, junior, the testator's grandchildren, get almost nothing. Could the testator have intended that? The language of the devise is, "I give," &c., "to," &c., to be divided among them, "or their heirs."

Had the language been to them *and* their heirs, the word heirs would probably have been regarded as a term of limitation; but it is among them *or* their heirs, that is, among them so far as they are living, and among their heirs—those who stand in their places—so far as they are dead. We think the testator intended to give to the heirs of *Sydnor* and *George*, junior, the shares that would have gone to their fathers respectively had they been living, naming the fathers for the sake of convenience, in his will, to indicate the proportion—the shares. In other words, we think the devise was not in fact to *Sydnor* and *George*, junior, but to their heirs. This construction of the will may not be favored by common law authorities, but seems to us to be justified by common sense; and that it is by common

justice, the enactment of our statutes above cited indicates.

Under the will, then, *Alexander, Joseph, John,* and *Samuel Dale,* had each an undivided sixth part of the real estate of the testator, *George Dale,* senior, and the heirs of *Sydnor* and *George,* junior, had each, as a group, an undivided sixth part of all of said real estate; and, by the will, all the real estate was disposed of to the devisees as tenants in common under our statute.

The proceedings for partition in the *Hamilton* Probate Court, in 1831, were utterly void, because the Court had no jurisdiction of the subject matter. Such jurisdiction was not conferred till 1833. *Doe* v. *Smith,* 1 Ind. R. 451. All the devisees continued, therefore, notwithstanding those proceedings, to be tenants in common of all the property.

The proceedings in 1837, in the same Court, for partition of a portion of the devised lands, in addition to the fact that they were based upon an entirely false assumption as to their ownership, were, it would seem, void for the want of notice to the parties interested, and, hence, for want of jurisdiction over the parties. The statute required the publication of notice four weeks in the newspaper. Now, when a statute prescribes a certain thing to be done to constitute constructive notice of a suit or legal proceedings, does it not take all of that thing to make notice? A part would seem to amount to nothing. The statute in this case said, publish four weeks in the newspaper and the Court shall have jurisdiction. It conferred it upon no less publication. But the statute was not complied with, and it would seem to follow that there was no jurisdiction. No discretion was left to the Court as to what should constitute notice. The statute was plain in its requirement. No judicial question arose upon its meaning on this point.

The partition proceedings of 1837, were but as to two-sixths of the property, and if void as to that, they still left the whole in the devisees as tenants in common. The sale to *Conner* and *Cole,* under those proceedings, was of no validity, conferred no rights, and constitutes no ground

on which to rest an injunction upon the ejectment to recover the legal possession.

But, on this point, it is proper we should remark, that it is not necessary to our conclusion to hold the notice in the proceedings of 1837 absolutely void; and as it is preferred by a part of the Court that the point should not be considered as decided, it is left open. The insufficiency of the notice rendered the proceedings erroneous, at all events, and they may yet be reversed on appeal, thus reaching the same result. The Court below, whether holding them erroneous or void, set aside the sale against *Conner*, and he does not appeal or complain of the decree. It is the heirs who appeal and complain of other parts of the decree below.

As to the refunding of the money, with interest, paid by *Conner* and *Cole* on their purchase, if the suit for an injunction was the proper one in which to adjudicate upon that matter, it was error to refuse to take into account, in the adjudication, the value of the rents and profits while the purchasers had occupied the property.

*Per Curiam.*—The decree against the heirs to refund, with all other decrees in the cause against them, is, therefore, reversed, and the cause remanded with instructions to dismiss the bill for an injunction, together with all cross bills depending upon it, leaving the devisees to pursue such course as they may deem best for recovering and apportioning among themselves their real estate; and leaving the questions of refunding payments and interest, and accounting for rents and profits, improvements, &c., to be adjusted by proper proceedings between *Conner* and *Cole* and the devisees, each party paying his own costs here and in the Court below; all which is to be certified.

*L. Barbour* and *A. G. Porter*, for the appellants.

*S. Yandes*, for the appellees.