May *et al. v.* Fletcher *et al.*

---

## May et al. *v.* Fletcher et al.

WIDOW.—*Dower.*—*Act of* 1852.—*Inchoate Right to Fee Simple.*—*Prior Mortgage.*—By the code of 1852 dower was abolished. It was within the power of the legislature to do this, where the right had not become consummate by the death of the husband. But this same law invested the wife with an inchoate right to a fee simple, to be made consummate by the death of her husband leaving her surviving. This right, however, could not be made to exist, as against a mortgage for purchase-money executed before the adoption of the code.

DESCENT.—*Sections Seventeen, Twenty-three, and Twenty-five.*—*Widow as Heir. Section Twenty-seven.*—*Conveyance by Husband Without Wife.*—*Sale on Execution.*—*Title of Widow.*—Under sections seventeen, twenty-three, and twenty-five of the statute of descents, the surviving wife takes the interest thereby conferred by descent and as heir of her husband. The legislature has the power to make a surviving wife, as well as a child, an heir; but under section twenty-seven, the interest therein provided for does not descend to the

surviving wife, but she is "entitled" etc.   The class of property contemplated in this section is that of which the husband was seized during coverture, but of which he did not die seized; except that the latter branch of the section relates to equitable interests.   Under this section, the wife does not take as heir, but by virtue of her marital relation, as widow.   She is entitled to the fee, instead of the dower at common law.   Where the husband conveys without the wife, or where the lands are sold on execution against him, the whole estate becomes vested in the purchaser, who becomes seized of the entire estate, and there is nothing left in the husband to descend to any one. If the husband dies, leaving the wife surviving, her hitherto inchoate right becomes consummate, divesting the purchaser of his title, to the extent of her right.

MORTGAGE FOR PURCHASE-MONEY.—*Redemption by Wife.*—Where a husband executed a mortgage of real estate in which the wife did not join, to secure the purchase-money of the real estate mortgaged, prior to the taking effect of the statute of 1852, the wife, upon that statute's going into force, became entitled, upon the contingency that she should survive her husband, to one-third of the land in fee, as against all persons except the mortgagee and those claiming under him.   This inchoate right, she might lose by means of the mortgage; therefore she had a right to redeem the property from the mortgage at any time prior to its foreclosure.

SAME.—*Mortgage in which Wife Joins.*—*Redemption.*—The statute places a wife in the same situation in respect to lands mortgaged for purchase-money, where she has not joined in the mortgage, that she occupies in respect to lands mortgaged not for purchase-money, where she has joined in the mortgage. For the purposes of redemption, it is utterly immaterial which of these situations she occupies.   Her right of redemption is equally clear in both cases.

SAME.—*Foreclosure Since Statute of* 1852.—*Wife Not Joined May Redeem.*— *A Proper Party to Foreclosure.*—Where there has been a foreclosure, since the taking effect of the statute of 1852, of a mortgage for the purchase-money of the mortgaged land, the mortgage having been executed by a husband before the statute of 1852 was in force, and the wife not having joined in the mortgage and not having been made a party to the foreclosure, she has a right to redeem the premises.   She has the same right as if she had joined in a mortgage not for purchase-money.   In either case she has the right to redeem, and is a proper party to a suit to foreclose the mortgage.   Where she has not been made a party to the proceeding, the case stands as to her as if the mortgage had not been foreclosed, and therefore her right of redemption is not cut off by the judgment.

APPEAL from the Marion Circuit Court.

WORDEN, J.—Complaint by the appellants against the appellees.   Demurrer sustained to complaint for want of sufficient facts, and exception.   Final judgment for defendants. The facts alleged are in substance as follows:

May *et al. v.* Fletcher *et al.*

On the 29th of December, 1852, Allen May and E. W. H. Ellis were the owners in fee of certain real estate situate in Marion county, and described in the complaint, and on that day they executed to The Peru and Indianapolis Railroad Company a mortgage to secure the payment of a sum of money due as a part of the purchase-money for the property. The property was afterward parted, or a portion of it, between May and Ellis. Afterward, on the 22d of November, 1855, the railroad company took a decree, in the Marion Circuit Court, for the foreclosure of the mortgage as against May (the said Ellis having paid his part of the debt) for the sum of six thousand nine hundred and sixty dollars and sixty-two cents, with directions for the sale of the part of the estate thus set apart to May in severalty, for the payment of the amount of the decree.

On the 28th of November, 1855, the railroad company sold and assigned the decree or judgment to the defendant Fletcher, who afterward caused an execution to be issued thereon and the property to be sold, he becoming the purchaser thereof, at the sum of nine hundred and fifty dollars, and receiving the sheriff's deed therefor. The appellant, Sinah May, was the wife of Allen May at the date of the execution of the mortgage, in which she did not join, nor was she made a party to the suit for foreclosure. Allen May died July 19th, 1860. His wife, Sinah, survived him, and since his death has sold a part of her interest in the premises to the other appellant Holmes. Fletcher has sold described portions of the property to the other defendants severally, and the residue he retains himself; he and the persons to whom he has sold having received large sums for the rents and profits thereof.

Prayer, that an account may be taken of what may be due on the mortgage, and that the plaintiffs be permitted to redeem the property from the mortgage, and that the property be parted, and one-third thereof set of, etc.

The question is presented, whether a widow can, under

the circumstances alleged, redeem such mortgage. This is the same question that was decided by a divided court in the case of *Fletcher* v. *Holmes*, 32 Ind. 497. Judge ELLIOTT, who wrote the prevailing opinion in the case, held that the widow could not redeem; and Judge RAY may be supposed to have concurred in that view, as he prepared no opinion in the cause. Judge GREGORY concurred in the opinion that the widow in that case had no right to redeem; but did not wish to be understood as holding, "where a husband purchases land, during marriage, and at the time of the purchase mortgages it to secure the purchase-money, and there is a foreclosure and sale during the lifetime of the husband, in a proceeding to which the wife is not a party, that she cannot, under any circumstances, redeem." Judge FRAZER was of opinion that the widow could redeem, and stated his views at length in an opinion dissenting from the conclusion arrived at by a majority of the court.

The question must be regarded as an open one, in view of the diversity of opinion amongst the judges who passed upon that case, and we must determine it upon the lights within our reach, and upon such considerations as present themselves to our minds.

By the statutes of 1843, which were in force when the mortgage in question was executed, the widow was endowed of one-third part of all the lands, the legal title to which was in her husband, or in any person to and for his use and benefit, at any time during the coverture, and also of any lands in which he had an equitable interest at the time of his death, unless the right of dower had been legally barred. There was also the following provision in relation to mortgages given to secure purchase-money:

"Where a husband shall purchase lands during the marriage, and shall, at the same time, mortgage his estate in such lands to secure the payment of the purchase-money, his widow shall not be entitled to dower out of such lands as against such mortgagee, or those claiming under him, although she shall not have united in such mortgage; but

she shall be entitled to her dower in such lands as against all other persons." R. S. 1843, p. 429, sec. 87.

But by the statutes of 1852, which did not take effect until May 6th, 1853, dower was abolished, and other provisions were made for the benefit of the surviving wife. The following sections of the act regulating descents, etc. (1 G. & H. 291), seem to be the only ones having any material bearing on the question before us:

"Sec. 17. If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; provided, however, that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only as against creditors.

"Sec. 27. A surviving wife is entitled, except as in section 17 excepted, to one-third of all the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law; and also of all lands in which her husband had an equitable interest at the time of his death; provided, that if the husband shall have left a will, the wife may elect to take under the will instead of this or the foregoing provisions of this act.

"Sec. 31. Where a husband shall purchase lands, during marriage, and shall, at the time of purchase, mortgage said lands to secure the whole or part of the considerations therefor, his widow, though she may not have united in said mortgage, shall not be entitled to her third of such lands, as against the mortgagee or persons claiming under him; but she shall be entitled to the same as against all other persons."

It may be noted that by sections 23 and 25, lands of which the husband dies seized, in the cases therein provided for, are made to descend to the surviving wife.

We have seen that, by the law in force at the time of the execution of the mortgage, it having been executed to

secure payment of purchase-money, Mrs. May was not entitled to dower in the premises, as against the mortgagee or those claiming under him, but she was entitled to dower as against all other persons. She then had an inchoate right of dower in the premises as against all persons except the mortgagee and those claiming under him.

But by the code of 1852, as has already been said, dower was abolished, and other provisions were made for the surviving wife. Upon the taking effect of the statutes of 1852, Mrs. May's inchoate right of dower was abolished. This was in the power of the legislature, the right not having become consummate by the death of the husband. But by the same law that abolished her dower, she was invested with an inchoate right to a fee simple, to be made consummate by the death of her husband, leaving her surviving. This was also equally within the power of the legislature. This right, however, did not, and could not, be made to exist as against the mortgagee or those claiming under him, inasmuch as the legal effect of the mortgage could not be changed by subsequent legislation, to the injury of the mortgagee. As by the statute of 1843, Mrs. May had an inchoate right of dower in the premises, as against all persons other than the mortgagee and those claiming under him, and as when that right was abolished by the statute of 1852, she took, by the latter statute, an inchoate right to the fee, subject to the same exception precisely, the case seems to stand upon the same ground as if the whole transaction had taken place after the statutes of 1852 had taken effect.

The difference in the two statutes, in respect to the quantity of the estate provided to be taken by the surviving wife, can in no way affect the question of her right of redemption.

Now, the facts alleged give rise to two questions; first, would Mrs. May have the right to redeem, had there been no foreclosure? second, if so, is she barred by the foreclosure, she not having been a party to the proceedings? The solution of these questions depends upon another, viz., in what capacity does a surviving wife take the interest confer-

red upon her in the lands of which her husband was seized during coverture, but of which he did not die seized? If she takes in such case by descent and simply as the heir of her husband, there must be an end of the question, for a judgment against the ancestor binds the heir. Moreover, if she takes simply as heir, the husband having been disseized in his lifetime, no estate descended to the widow, and consequently she has no interest to redeem from the mortgage. There can be no doubt, that under sections seventeen, twenty-three, and twenty-five of the statute of descents, the surviving wife takes the interest thereby conferred, by descent and as heir to her husband. These sections are explicit that the land, as therein provided for, "shall descend" to her. They provide for the disposition of lands only of which the ancestor shall die seized. There is no incongruity in holding that in such cases the widow takes as heir to her husband, for she takes simply by descent that of which the husband died seized, and which must go by descent to some heirs, in the absence of any testamentary disposition. The legislature have the power to make a surviving wife, as well as a child, an heir.

But the language, as well as the subject-matter of section twenty-seven, is entirely different. There is no intimation therein that the interest therein provided for shall "descend" to the surviving wife. It provides, that "a surviving wife is entitled," etc., "to one-third of the real estate of which her husband may have been seized in fee simple, at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law."

The class of property contemplated by this section is that of which the husband was seized during coverture, but of which he did not die seized, except the latter branch of the section, which relates to equitable interests; and instead of providing for the descent of such property, the legislature simply declare that the surviving wife is entitled to one-third of it. The language, unlike that of sections seventeen, twenty-three, and twenty-five, does not imply that she is to

take one-third of such property by descent, as the heir of her husband. The legislature were not guilty of the solecism of providing for the descent to an heir of property not belonging to the ancestor. In reference to this class of property the legislature simply declared, not that it should descend to the surviving wife, whereby it would become hers, but that she "is entitled" to it.

It is quite evident to our minds, from an examination of the statute, that the interest to which the surviving wife is thus declared to be entitled, was not intended by the legislature to be taken by her as by descent as an heir of her husband, but that she was declared to be entitled to the same *in view* of her marital relations, and as a substitute for dower. She thereby became entitled to the fee instead of the common law dower interest.

There are some cases in our reports in which language has been employed that seems to militate against this view, but an examination of them will show that the distinction in the language, and perhaps the subject-matter, between the different sections of the statute has been overlooked, or the cases themselves only involved questions arising under some section that in terms provides for a descent to the widow of lands of which her husband died seized.

The case of *Frantz* v. *Harrow,* 13 Ind. 507, was this. A widow claimed dower in lands of her husband which had been sold on execution against him before the statutes of 1852 took effect, the husband having died afterward. It was held, that as dower was abolished by the act of 1852, the widow was not entitled to any interest in the estate. The court say that "the widow, if she be entitled to one-third of the land in fee, would seem to take it as heir to her husband. The law entitling her to it, declares that it shall descend to her." And the seventeenth section of the statute is cited. It is apparent that the mind of the writer of that opinion was not drawn to the distinction between the language of section seventeen and twenty-seven, nor was the entire statute at all carefully considered. *Johnson* v. *Lybrook,* 16

Ind. 473, was a case where the husband died seized of the land, and, of course, whatever interest she took was by descent and as heir. In *Murray* v. *Mounts*, 19 Ind. 364, the court say: "By section seventeen," etc., "it is provided, that, under certain circumstances, one-third of the real estate of a deceased husband shall descend to the widow. It has been held, under this, that she takes as heir of her husband," citing the two foregoing cases. Here again it is quite apparent that the attention of the court was not drawn to the difference, in language and matter, between sections seventeen and twenty-seven. The case of *The State, ex rel. Lockhart*, v. *Mason*, 21 Ind. 171, if in point at all, is in favor of the conclusion at which we have arrived, that under section twenty-seven the widow does not take as heir, as she does not take by descent. The question was, whether the widow was an heir within the meaning of a statute that authorized heirs to sue on an administrator's bond, and it was held that she was. The seventeenth and twenty-third sections are pointed out as casting the descent upon the widow. The court add, that "there are other provisions of the law casting the descent upon the widow. Now, it seems to us, that, so far as the widow takes by descent from her husband, she must take as his heir."

This we regard as indisputable, but the converse is implied and necessarily follows, viz., that where she does not take by descent she does not take as heir. In *McMakin* v. *Michaels*, 23 Ind. 462, the husband died seized of the land in dispute, and the question discussed was, who inherited from the widow, at her death, the land inherited by her from her husband? The case has no bearing upon the question before us. In *Rockhill* v. *Nelson*, 24 Ind. 422, the husband died seized of the land in dispute, and the question was as to the rights of the widow under the proviso to the twenty-fourth section of the statute of descents. The question involved here was not in that case at all. The court say, it is true, that "by the seventeenth section of that law" (the statute of descents), "the surviving widow takes one-third, in fee,

of all the lands of which the husband died seized. By the twenty-seventh section she takes, as the heir of her husband, one-third, in fee, of all the land owned by the husband at any time during the coverture, in the conveyance of which she has not joined, and one-third, absolutely, of all equitable estates owned by him at his death." The material point in the case not being whether the widow took as heir or otherwise, we are led to think that by inadvertence the statement that she took as heir was, by mistake, applied to the twenty-seventh section when it was intended to be applied to the seventeenth. Correcting the supposed mistake, we concur in the statement.

The case of *Rusing* v. *Rusing*, 25 Ind. 63, was a case where the husband died seized of the land, and has no bearing upon the point under consideration.

We have thus examined the cases which have been brought to our attention that are supposed to establish the proposition that whatever right a woman takes, under section 27, to lands of which her husband did not die seized, she takes as heir. We do not think they establish it. On the contrary, it seems to us clear that she takes such right as widow, and by virtue of the marital relation. Upon the marriage of the parties, and the seizin of the husband, the wife acquires, as formerly in dower, an inchoate right in the property, of which she cannot be deprived, except by her own act, and that inchoate right becomes consummate upon her surviving her husband. We do not concur in the theory that the statute compels the husband, during coverture, to stand seized of one-third of his land held in fee, upon the contingency that his wife survives him, in which event it descends to her under the statute.

We think that where the husband conveys without the wife, or where the lands are sold on execution against him, the whole estate becomes vested in the purchaser, who becomes seized of the entire estate, and there is nothing left in the husband to descend to any one. This may well be, as the right of the wife is only inchoate before the death of

the husband. When that event occurs, leaving the wife surviving, her hitherto inchoate right becomes consummate, and the purchaser is divested of his title to the extent of her right. The purchaser from the husband acquires the entire estate, and holds it during the coverture, but may be divested of a part thereof by the demise of the husband, leaving his wife surviving.

The theory that the husband still stands seized of a part of the property after having made a conveyance of the whole of it, has no foundation in the statute or in any principle of the law. The necessity of assuming it grows out of the erroneous proposition, that the surviving wife takes by descent property which did not belong to the husband, so far as he could divest himself thereof, at the time of his death. The theory is subject to insuperable objections and difficulties. When a man makes and delivers a deed, all the estate passes upon the delivery that ever passes by the deed. If the grantor's wife die before the grantor, the purchaser holds the entire estate; but if in the mean time the grantor remain seized of a part of the estate to await the contingency of his wife surviving him, how does that seizin pass to the purchaser upon the death of the grantor's wife? Does the death of the grantor's wife, leaving the husband, operate to divest the husband of, and invest the purchaser with, the title to one-third of the property previously conveyed by the husband? Can the husband, after his conveyance, remain seized or not seized of one-third of the estate conveyed by him, as the happening or not happening of his wife's survivorship may require?

The proposition that when the husband conveys, the entire estate passes to the purchaser, who takes it with the contingency that he may be divested of a part thereof by the survivorship of the wife, is not without analogy in the common law. It is a rule of the common law that the freehold shall never, if possible, be in abeyance; and, therefore, lands descend to the person who is heir at the death of the ancestor, but such descent may be defeated by the subse-

quent birth of a nearer heir. Such was the common law, though the statute of descents may have changed that rule in this State. *Cox* v. *Matthews,* 17 Ind. 367.

Having arrived at the conclusion that a surviving wife, in such cases as that under consideration, takes as widow and by virtue of her marital relation, and not by descent as an heir, we proceed to inquire further as to her rights in relation to the property. We have seen that when the statutes of 1852 took effect, Mrs. May became entitled, upon the contingency that she should survive her husband, to one-third of the land in fee, as against all persons except the mortgagee and those claiming under him. This inchoate right, which might become consummate by her survivorship of her husband, she might lose by means of the mortgage; and hence it is clear to us, both on principle and authority, that she had a right to redeem the property from the mortgage. Mr. Justice STORY says that any persons who have acquired any interest in the lands mortgaged, by operation of law or otherwise, in privity of title, may redeem. Such persons have a clear right to disengage the property from all incumbrances, in order to make their own claims beneficial or available. 2 Story Eq. Jur., sec. 1023. For other authorities on the subject of redemption, we content ourselves with referring to the case of *Mills* v. *Van Voorhies,* 20 N. Y. 412, which meets our approval, and the other cases cited in the opinions in the case in 32 Ind. 497, before referred to.

It is quite clear that if a wife execute a mortgage with her husband, not for purchase-money, she may redeem. We see no substantial difference, so far as the right of redemption is concerned, between that case and the case of a mortgage executed by the husband alone for purchase-money. In both cases, under our law, the legal title remains in the husband, but subject to the incumbrance. The thirty-first section provides that the surviving wife shall not be entitled to one-third of the land as against the mortgagee for purchase-money, or those claiming under him, though she did not join in the mortgage. This is not to be construed to bar

her claim as against such persons as individuals merely, but only as they claim under the mortgage. In both cases the wife retains her interest, subject to the incumbrance, and a like interest in either case.

She does not retain, in either case, any interest as against the mortgagee or those claiming under him through the mortgage. The mortgagee and those claiming under him, in each case, have the same right to hold the entire land for the debt; and when the debt is discharged, they have no interest in, or claim upon, the property.

The difference in the two cases is this: In the case of a mortgage not for purchase-money, in which the wife joined, she had an inchoate interest in the same, but she divested herself thereof in favor of the mortgagee and those claiming under him, by joining in the mortgage. In the case of a mortgage for purchase-money executed at the time of the purchase, the wife has no interest in the land as against the mortgagee or those claiming under him. The result is the same in each case. In each case the wife retains her inchoate right in the land, but subject to the mortgage. The statute places a wife in the same situation in respect to lands mortgaged for purchase-money, where she has not joined in the mortgage, that she occupies in respect to lands mortgaged not for purchase-money, where she has joined in the mortgage.

For the purposes of redemption, it is utterly immaterial which of these situations she occupies. Her right of redemption is equally clear in both cases.

We come to the only remaining question. Is Mrs. May barred of her right of redemption by the foreclosure? This question, under the authorities, admits of but one answer. As she was not a party to the proceeding, the case stands, as to her, as if the mortgage had not been foreclosed, and of course her right of redemption is not cut off by the judgment. *Holmes* v. *Bybee*, 34 Ind. 262. In the case cited it was said to be a universal principle of jurisprudence that no party is bound by the judgment of any court, in a pro-

ceeding to which he is not a party.· We may add that a party must have his day in court, before he can be deprived by the judgment of a court of a right which he would have in the absence of the judgment. We regard the argument as fallacious, that as Mrs. May never had any right in this land as against the mortgagee, or those claiming under him, she had no right as against them to be foreclosed, and hence was not a necessary party. We have already seen that she had the same right as if she had joined in a mortgage not for purchase-money. In either case she has the right to redeem, and of this right she cannot be deprived by any judgment in a proceeding to which she is not a party.

The conclusion to which we are necessarily led from these considerations is, that the right of redemption exists in the case and is not barred by the foreclosure, and hence that the court erred in sustaining the demurrer to the complaint.

The judgment below is reversed, with costs, and the cause remanded, with instructions to proceed in accordance with this opinion.

· *L. Barbour* and *C. P. Jacobs*, for appellants.
*A. G. Porter* and *B. Harrison*, for appellees.