ROBBINS *v.* SPRINGER ET AL.

[No. 17,889. Filed November 21, 1949.]

*Regester & Regester,* of Bloomington; and *Homer Elliott,* of Martinsville, for appellant.

*James W. Blair;* and *Evens & Baker,* all of Bloomington; and *Cedric G. Hamlin,* of Dallas, Texas, for appellees.

CRUMPACKER, J.—This is an action to construe "Item III" of the will of Charles L. Rawles, deceased. The actual controversy is between the appellant Hilda Springer Robbins and the appellee Ruby L. Springer. The interests of the other appellees being unaffected by its outcome, our use of the word "appellee" will be understood to refer to Ruby L. Springer only.

So much of said "Item III" as is necessary to a decision is as follows:

"I give, devise and bequeath all the residue of my property, both real, personal and mixed, of every kind and character and wherever situated, in fee simple, to my sister-in-law, Harriet Post Rawles, a one-third interest; to my sister Mrs. Ella Rawles Springer, a one-third interest; and to my sister, Mrs. Grace Rawles Wheeler, a one-third interest, . . . . In the event my . . . sister Mrs. Ella Rawles Springer . . . should die prior to the date of my death, then and in such event, I will, devise and bequeath the one-third share of my estate which said decedent would have received, if she had survived me, to the child or children of said decedent, or their heirs, the share received by said child or children of said decedent, or their heirs, to be divided according to the laws of descent of the State of Indiana."

When the will was executed Ella Rawles Springer had two living children—the appellant Hilda Springer Robbins and Henry Springer. Henry Springer survived his mother but both preceded the testator in death. Henry Springer left surviving his widow, Ruby L. Springer, no parents and no children or descendants of children. On this state of facts the appellant Hilda Springer Robbins contends that the will gives to her the entire one-third of the testator's residuary estate which her mother would have taken had she survived him. On the other hand the appellee insists that, as the widow of Henry Springer, she takes the share her husband would have received had he survived the testator. The trial court resolved this controversy in favor of the appellee and we are asked to review such ruling.

The appellant rests her case on two main propositions. First, where a testator gives his property generally to the children of a certain person, without naming them, the gift is to a class and the property goes to such members of the class as are alive at the

time of the testator's death. That the children of Ella Rawles Springer are not mentioned by name in the will and hence the gift is to them as a class of which only the appellant was alive when the testator died and hence she takes all. Second, the word "heirs," as used in the testator's will, means heirs in the blood line and therefore the appellee, as the widow of Henry Springer, takes nothing.

There can be no disagreement over the law applicable to bequests or devises to class beneficiaries. The persons constituting the class are ascertained and determined as of the date of the testator's death and the heirs of deceased persons who were members of the class at the time the will was executed but preceded the testator in death, take nothing. *Alsman* v. *Walters* (1916), 184 Ind. 565, 106 N. E. 879. Had the testator said "I give, devise and bequeath one-third of my residuary estate to my sister Ella Rawles Springer and in the event she shall die prior to the date of my death then I will, devise and bequeath the one-third share of my estate which said decedent would have received if she had survived me, to the child or children of said decedent" and stopped there the appellant, as the sole member of the class at the time the testator died, would take the entire gift. However, the testator added to the phrase "child or children of said decedent" the words "or their heirs" and then provided that the share received by such heirs should be divided according to the laws of descent of this state. It has been generally held that such language, unless a contrary intent is manifested by the context of the will itself, constitutes a substitutionary gift to the heirs of any primary beneficiary who may have preceded the testator in death. 69 C. J., Wills, § 1358, p. 352.

We conclude, from an analysis of the cases collected in an annotation on the subject appearing in 75 A. L. R. 773, as supplemented in 105 A. L. R. 1394, that there is some conflict of authority as to whether a class gift loses its character by including in its terms a provision for a substitutionary gift over if a member of the class dies before the death of the testator and thereby becomes a gift to individuals and not to a class. The earlier cases hold that a gift over to an unnamed group, such as heirs or issue, merely creates a sub-class and puts it in the place of the deceased member of the primary class. See *Dove* v. *Johnson* (1886), 141 Mass. 287, 5 N. E. 520. The modern view, however, seems to be "that the presence of a substitutionary gift over, upon the decease of a legatee, indicates that a gift to a group of which such legatee is a member is one to individuals and not to the group as a class." 105 A. L. R. 1400; 57 Am. Jur., Wills, § 1260, p. 832. We are advised of no case in Indiana which commits us to either of these rules and as far as the present case is concerned it makes no difference whether we regard the gift to the children of Ella Rawles Springer as a gift to individuals or to the members of a class. The intent of the testator to substitute, under certain circumstances, the heirs of such children as beneficiaries of the gift is manifest and such intent must be given effect. 3 Page, *Wills* 252 (3rd Ed.).

The appellant contends, however, that even if this is the correct construction of the testator's will the appellee can take nothing because, as the widow of Ella Rawles Springer's son Henry, she is not his heir in the sense that the word "heirs" is used in the will. In support of this proposition the appellant says that prior to 1852 a widow was not, in either legal or popular understanding, an heir of her deceased husband. That the

statutes of descent enacted in that year in no way changed her status but merely permitted her to take, as a marital right and not by inheritance, varying portions of her husband's estate regardless of a will but depending upon the number of heirs in the direct blood line he left surviving. *May* v. *Fletcher* (1872), 40 Ind. 575.

It is true that at common law a widow was not an heir of her deceased husband and if she is such now it must be by virtue of statutory enactment. It is further true that in none of our statutes governing the descent and distribution of the property of deceased persons is a widow, as such, specifically called an heir. However the Supreme Court has had the question before it many times and in each instance has held that the property conferred upon a widow by statute is taken by her as an heir of her deceased husband. *Davis* v. *Kelly* (1912), 179 Ind. 13, 97 N. E. 336; *Smock, Guardian* v. *Reichwine* (1889), 117 Ind. 194, 19 N. E. 776; *Brown* v. *Harmon* (1881), 73 Ind. 412; *Bowen* v. *Preston* (1874), 48 Ind. 367; *May* v. *Fletcher, supra; Fletcher* v. *Holmes* (1870), 32 Ind. 497; *The State ex rel. Lockhart* v. *Mason* (1863), 21 Ind. 171.

Although there are some decisions in Indiana which hold that a widow is an heir of her husband only in a special and limited sense, *Unfried* v. *Heberer* (1878), 63 Ind. 67; *Derry* v. *Derry* (1881), 74 Ind. 560; *McNutt* v. *McNutt* (1889), 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372, neither in these cases nor in any other case of which we are advised, is it held that a widow is not, under the statutes of descent, the recipient of property from her husband as his heir. *Ames, Admr.* v. *Conry, Admx.* (1928), 87 Ind. App. 149, 158 N. E. 643, 165 N. E. 435.

It has been held that a widow's rights in real estate conveyed by her husband during his lifetime, in the

conveyance of which she did not join, are taken by her by virtue of the marital status and not by descent as his heir. However, a widow's rights under such circumstances are governed by § 27 of the Code of 1852 (Burns' 1933, § 6-2325) which the Supreme Court, in *May* v. *Fletcher, supra,* said is not a statute of descent. The word "heirs" cannot be disassociated with the idea of descent and when the testator used it he must necessarily have had in mind those who would take by the laws of descent from a child of his sister Ella Springer if both said sister and said child preceded him in death.

The latest pronouncement on the subject by this court is found in *Sieb, Gdn.* v. *Miller* (1936), 102 Ind. App. 389, 2 N. E. 2d 794. The will in that case left the testator's entire estate in trust for his children, the corpus eventually to be divided among such children and the heirs of any deceased child. Before the termination of the trust one of the testator's children died leaving a husband and one child surviving. We held that the widower was an heir of his deceased wife and took equally with his son in the distribution of his deceased wife's share of the trust estate. See also *Golden's Estate* (1935), 320 Pa. 4, 181 Atl. 484. The appellant discounts the applicability of the Sieb case on the theory that the testator's daughter had a vested interest in the trust estate when she died even though it had not yet terminated and therefore the husband took from his wife and not from the testator. The case however was not decided on that theory. The fundamental question involved concerned the testator's intention, in the use of the word "heirs," in the disposition of his daughter's share of his estate in the event she died before the trust terminated.

It is conceded that the word "heirs," when used in a will to designate beneficiaries, may mean heirs of the

blood only, but that meaning cannot be given ██ to the word unless it clearly appears that it was used by the testator in that restricted sense. *Sieb, Gdn.* v. *Miller, supra; Ridgeway* v. *Lanphear* (1885), 99 Ind. 251; *Brumfield* v. *Drook* (1885), 101 Ind. 190; *Hochstedler* v. *Hochstedler* (1886), 108 Ind. 506, 9 N. E. 467; *Underwood* v. *Robbins* (1889), 117 Ind. 308, 20 N. E. 230; *McCllen* v. *Sehker* (1919), 70 Ind. App. 435, 123 N. E. 475. We find nothing in the will under consideration, nor in the extrinsic evidence adduced at the trial, indicating that the testator intended that his property should remain in the blood line to the exclusion of statutory heirs. It seems to us that quite the contrary appears as, in the very item of his will here involved, he left one-third of his residuary estate to a sister-in-law to the exclusion of nephews of his blood.

The appellant leans heavily on the case of *Duzan* v. *Chappel* (1908), 41 Ind. App. 651, 84 N. E. 775, wherein this court held that a will devising to the testator's wife a life estate in his property, remainder over to a son in case he survived such wife, and if he did not so survive her and should "die without an heir" then over, does not give to such son's widow any interest in the estate as the word "heir" means a child or its descendants. It will be noted that this holding was based on the fact that the will clearly manifested the testator's intention to use the word "heir" in that limited sense. We consider the decision to be in harmony with our conclusions herein.

Judgment affirmed.

Martin, J., not participating.

Bowen, C. J., not participating.

NOTE.—Reported in 88 N. E. 2d 573.