**Robert F. KECK, Janet L. Russell, Appellants–Plaintiffs,**

v.

**Mary Ann WALKER, Individually, And as Personal Representative of the Estate of Edith M. Dawdy, et al., Appellees–Defendants.**

No. 69A01–0909–CV–467.

Court of Appeals of Indiana.

March 3, 2010.

David D. Deeter, Wade D. Fulford, Dale & Eke Professional Corporation, Indianapolis, IN, Attorneys for Appellants.

John L. Kellerman, II, Batesville, IN, for Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Robert F. Keck ("Keck") and Janet L. Russell ("Russell") (collectively "the Plaintiffs") filed a complaint in Ripley Circuit Court against Mary Ann Walker, individually and as the personal representative of the Estate of Edith M. Dawdy ("the Estate"), challenging the validity of the probated will and codicils of the decedent. The trial court granted summary judgment in favor of the Estate. The Plaintiffs appeal and claim that the trial court erred in concluding that the bequest to their deceased mother lapsed.

We affirm.

### Facts and Procedural History

The underlying facts are mostly undisputed. Edith M. Dawdy ("Dawdy") executed her Last Will and Testament ("the Will") on April 13, 1994. The Will included a residuary clause which provided that Luella Keck ("Luella"), who was Dawdy's first cousin and the mother of the Plaintiffs, would receive a share of the residue of the Estate:

> "I give, bequeath and devise all the rest and residue of my property to Luella Keck, Edith Zimmer, Jean Frazier, Bill Frazier and Margaret Ruger in equal shares, share and share alike."

Appellant's App. p. 24.

On July 8, 1995, Luella died. Less than six months later, on December 26, 1995, Dawdy executed a Codicil to her Will. This first Codicil amended the residuary clause to include Mary Ann Walker as a beneficiary but still listed the now-deceased Luella:

> I give, bequeath and devise all the rest and residue of my property to Luella Keck, Edith Zimmer, Jean Frazier, Bill Frazier, Margaret Ruger and Mary Ann

Walker in equal shares, share and share alike.

Appellant's App. p. 37.

On February 6, 2001, over five years after Luella died, Dawdy executed another Codicil to her Will. This second Codicil amended the residuary clause yet again, but still included Luella as a beneficiary:

> I give, bequeath and devise 1/5 of all the rest and residue of my property to Luella Keck, Jean and Bill Frazier, or the survivor of them, Margaret Ruger and Mary Ann Walker, and the remaining 1/5 to be divided equally among Edith Zimmer, Leslie Smith and Paul Smith.

Appellant's App. p. 40. Dawdy died on April 28, 2006, almost five years after executing the Second Codicil.

On May 3, 2006, Mary Ann Walker, as the named personal representative, petitioned to probate Dawdy's Will and the two Codicils. The trial court entered an order on May 8, 2006, admitting the Will and Codicils to probate. The Plaintiffs filed a verified complaint on August 4, 2006, contesting the validity of the Will and Codicils. In Count I of their complaint, the Plaintiffs alleged that, based on statements by Dawdy, the probated Will and Codicils had been superseded by a subsequent will. In Count II, the Plaintiffs argued in the alternative that the inclusion of their long-deceased mother, Luella, in the residuary clause, coupled with alleged oral statements by Dawdy, evidenced an intent that the Plaintiffs were to receive Luella's share of the residual estate.

On May 14, 2007, the Plaintiffs filed a motion for summary judgment claiming that they were entitled to their mother's share of the residual estate. In support of their motion, the Plaintiffs designated an affidavit of Russell, which averred: (1) that Luella died on July 8, 1995 and that her funeral was held on July 11, 1995; (2) that Dawdy had sent flowers to Luella's funeral and personally attended the services; (3) that Dawdy had sent the Plaintiffs $50 to help pay for the expense of Luella's funeral; and (4) that after Luella died, Dawdy repeatedly told Russell that she and Keck would be taken care of in Dawdy's will by receiving Luella's share of the estate. Appellant's App. pp. 20–21, 26–36. Based on this, the Plaintiffs argued that they should receive their mother's share of Dawdy's estate.

On June 15, 2007, the Estate responded to the Plaintiffs' motion for summary judgment, arguing that the bequest to Luella had lapsed, that the Will and Codicils were not ambiguous, and that Russell's affidavit was inadmissible pursuant to Indiana Code section 34–45–2–4, commonly known as the Dead Man's Statute. The trial court entered an order on July 19, 2007, concluding that the bequest to Luella had lapsed and that the Estate was entitled to summary judgment on that issue.

The Plaintiffs then filed a motion to correct error on July 26, 2007, which the trial court denied on August 15, 2007. On September 13, 2007, the Plaintiffs filed a request that the trial court certify its order denying their motion to correct error for interlocutory appeal.[1] This court ini-

---

1. Because the Plaintiffs' motion for summary judgment was based only on Count II of their complaint, the trial court's order was one granting partial summary judgment. Moreover, the trial court's order granting partial summary judgment did not include language which would have deemed the order final. *See* Indiana Trial Rule 56(C) ("A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties.").

tially accepted interlocutory jurisdiction. However, we later issued a memorandum decision holding that the Plaintiffs' motion to correct error was properly considered a motion to reconsider, concluding as follows:

Because the trial court's order was not a final order, Keck and Russell should not have filed a motion to correct error. A "motion to correct error, if any shall be filed not later than thirty (30) days after the entry of a *final judgment* or an appealable *final order.*" Ind. Trial Rule 59(C) (emphasis added). *See also Hubbard v. Hubbard,* 690 N.E.2d 1219, 1220–21 (Ind.Ct.App.1998) (motion to reconsider pursuant to T.R. 53.4 may be made prior to entry of final judgment; after final judgment, a party may file a motion to correct error pursuant to T.R. 59).

Accordingly, Keck and Russell's motion should be viewed as a motion to reconsider. *See id.* (although appellee improperly designated her motion as a motion to reconsider, we treated it as a motion to correct error and considered whether it was proper under T.R. 59). A motion to reconsider does not "extend the time for any further required or permitted action, motion, or proceedings." T.R. 53.4(A). Therefore, Keck and Russell needed to file their motion for certification of interlocutory appeal within thirty days of the summary judgment order. Ind. Appellate Rule 14(B)(1)(a).

The trial court issued its summary judgment order on July 19, 2007. Keck and Russell did not request certification of an interlocutory appeal until September 13, 2007; therefore, it was not timely filed. App. R. 14(B)(1)(a) allows for late filing if the trial court makes a finding that good cause has been shown, but no such finding was made in this case. Our jurisdiction over interlocu-

tory appeals is subject to the procedures outlined in App. R. 14. App. R. 5(B). Therefore, we should not have accepted jurisdiction, and we now dismiss the appeal.

*Keck v. Walker,* No. 69A04–0710–CV–590, 888 N.E.2d 877, 2008 WL 2390805, slip op. at 4–5 (Ind. Ct.App. June 13, 2008).

On remand, the Plaintiffs filed a notice of voluntary dismissal with prejudice on August 21, 2009, seeking to dismiss Count I of their complaint. The trial court approved the Plaintiffs' dismissal and entered an order stating that its earlier order granting summary judgment as to Count II "[wa]s now a final and appealable order and the case in its entirety is now final AND SO ORDERED." Appellant's App. p. 67. The Plaintiffs filed a notice of appeal on September 23, 2009.

### I. Timeliness of Appeal

■ Before we address the Plaintiffs' contentions, we first turn to the Estate's argument that the Plaintiffs' appeal is untimely. The Estate claims that the Plaintiffs "effectively barred further adjudication" of their claim on Count II of their complaint by dismissing Count I. Appellees' Br. p. 3. Specifically, the Estate claims that the trial court's July 17, 2007 order granting summary judgment to the Estate as to Count II of the complaint was a final judgment and that the Plaintiffs should have filed a notice of appeal within thirty days of that order. We disagree.

The Estate's argument overlooks that fact that the trial court's summary judgment order of July 17, 2007 was not a final judgment at the time it was entered because it did not then "dispose[ ] of all claims as to all parties," nor did the trial court determine expressly in writing that there was no just reason for delay and deem the order final pursuant to Trial Rule 56(C). *See* Ind. Appellate Rule

2(H)(1), (2); *see also Rayle v. Bolin,* 769 N.E.2d 636, 638 (Ind.Ct.App.2002) (noting that, unless deemed final by the trial court pursuant to Trial Rule 56(C), a partial summary judgment is an interlocutory order and is not appealable unless it falls within the parameters for certification of an interlocutory appeal); *Krueger v. Bailey,* 406 N.E.2d 665, 667 (Ind.Ct.App.1980) (a summary judgment which disposes of less than all the claims or parties is interlocutory and not final).

Thus, at the time the trial court entered its order granting partial summary judgment to the Estate, the order was not a final judgment. In fact, this was central to the holding of our earlier opinion in this case in which we determined that "the trial court's order was not a final order," in that it "d[id] not dispose of the first count of [the Plaintiffs'] complaint." *Keck,* 888 N.E.2d 877, slip op. at 4. In short, the trial court's order granting partial summary judgment to the Estate was not a final order.

■ However, when Count I of the Plaintiffs' complaint was voluntarily dismissed upon remand, this had the effect of eliminating any remaining issues between the parties. The Estate argues that this retroactively transformed the earlier order granting partial summary judgment into a final order which the Plaintiffs were required to appeal as a final order within thirty days, even though at the time it was entered, the trial court's order was not final. This is absurd.

We conclude instead that the trial court's order granting the Plaintiffs' request to dismiss Count I, when considered in conjunction with the earlier grant of partial summary judgment in favor of the Estate on Count II, had the effect of disposing of all issues as to all parties. In other words, the trial court's order approving the dismissal of Count I was a final

judgment. And the Plaintiffs timely filed a notice of appeal from that order.

■ Moreover, the Plaintiffs' failure to timely seek interlocutory appeal of the trial court's grant of partial summary judgment in favor of the Estate does not prevent them from challenging the summary judgment order following final judgment. A claim of error in an interlocutory order, even an interlocutory order which is appealable as of right, is not waived for failure to take an interlocutory appeal but instead may be raised on appeal from the final judgment. *Bojrab v. Bojrab,* 810 N.E.2d 1008, 1014 (Ind.2004); *see also Trinity Baptist Church v. Howard,* 869 N.E.2d 1225, 1227 (Ind.Ct.App.2007) (holding that appellant's timely notice of appeal pertaining to the final judgment was also timely as to the interlocutory order denying summary judgment); *cf. Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 501 (Ind.Ct.App.2007) (noting that party who fails to bring interlocutory appeal from denial of motion for summary judgment may still pursue appeal after entry of final judgment).

## II. Construction of the Will

■ The Plaintiffs claim that the trial court erred in granting summary judgment in favor of the Estate on the issue presented in Count II of the complaint, i.e., whether the bequest to Luella contained in the Will and Codicils lapsed due to Luella's death.

Upon review of a trial court's decision on summary judgment, our standard of review is well settled: summary judgment is appropriate only where the designated evidence reveals no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Lauth Ind. Resort & Casino, LLC v. Lost River Dev., LLC,* 889 N.E.2d 915, 919 (Ind.

Ct.App.2008) (citing Ind. Trial Rule 56(C); *Garneau v. Bush*, 838 N.E.2d 1134, 1140 (Ind.Ct.App.2005)), *trans. denied.*

▮▮▮ The interpretation of a will is a question of law for the court. *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1197 (Ind.2008). In construing the language of a will, our primary focus is upon the intent of the testatrix. *Id.* To determine the intent of the testatrix, we look to the four corners of the will and the language used in the instrument. *Id.* The will in all its parts must be considered together. *Id.* When construing the language of a will, we should strive to give effect to every provision, clause, term, or word if possible. *Id.*

▮▮▮ "The general rule is well-settled that where a bequest is made in a will and the person to whom the bequest is made predeceases the testator, the bequest lapses. This has been and is the rule in Indiana." *Farmers & Merchants State Bank v. Feltis*, 150 Ind.App. 284, 288, 276 N.E.2d 204, 206 (1971) (citing *West v. West* 89 Ind. 529, 531 (1883); *Maxwell v. Featherston*, 83 Ind. 339, 340–41 (1882); *Edwards v. Beard*, 77 Ind.App. 478, 481–82, 134 N.E. 203, 204 (1922)); *see also Graham v. Anderson*, 454 N.E.2d 870, 873 (Ind.Ct.App.1983) (noting rule that devise to deceased beneficiary lapses and rests in the remaining residuary beneficiaries).[2]

Under the general rule, then, the bequest to Luella would lapse because she predeceased the testatrix, Dawdy. The Plaintiffs claim, however, that the present case does not fall within the general rule because, although Luella was alive at the time the original Will was executed, she was already dead at the time the Codicils were executed.[3]

In support of their claim, the Plaintiffs rely on *Taylor v. Conner*, 7 Ind. 115 (1855). In that case, the testator devised his real estate equally to his six sons, with the residue of his money to be distributed equally between his daughters and with a specific bequest of personal property to a

2. Indiana has long had an "anti-lapse" statute. *See* Ind.Code § 29–1–6–1(g) (1999) (current anti-lapse statute); *Holbrook v. McCleary*, 79 Ind. 167, 170–71 (1881) (citing then-existing anti-lapse statute codified at 2 Rev. Stat. 1876, p. 573). The current anti-lapse statute provides:

> If a devise of real or personal property, not included in the residuary clause of the will, is void, is revoked, or lapses, it shall become a part of the residue, and shall pass to the residuary devisee. *Whenever any estate, real or personal, shall be devised to any descendant of the testator, and such devisee shall die during the lifetime of the testator, whether before or after the execution of the will, leaving a descendant who shall survive such testator, such devise shall not lapse, but the property so devised shall vest in the surviving descendant of the devisee as if such devisee had survived the testator and died intestate.* The word "descendant", as used in this section, includes children adopted during minority by the testator and by the testator's descendants and includes descendants of such adopted children. "Descen-

dant" also includes children of the mother who are born out of wedlock, and children of the father who are born out of wedlock, if, but only if, such child's right to inherit from such father is, or has been, established in the manner provided in IC 29–1–2–7. This rule applies where the parent is a descendant of the testator as well as where the parent is the testator. Descendants of such children shall also be included.

I.C. § 29–1–6–1(g) (emphasis added). The Plaintiffs are clearly not "descendants" as that term is defined by the anti-lapse statute, nor do they even argue that they are. The anti-lapse statute is therefore inapplicable to the present case.

3. Indeed, the Plaintiffs concede that, if this were simply a case where the named beneficiary was alive at the time of the execution of the will, and then predeceased the testatrix, then the bequest to Luella would lapse. *See* Appellant's Br. p. 7 n. 2 (citing *Graham*, 454 N.E.2d at 872–73).

niece. *Id.* at 117. At the time of the execution of the will, two of the testator's six sons were dead and known to be dead by the testator. *Id.* at 119. The question presented to the court on appeal was "what became of the two-sixths of the real estate nominally, it is contended, given to [the deceased sons], alone, who were dead, at the time of the devise, and, of course, could not take? Did they go to the heirs of [the deceased sons] or did they lapse to the heirs in general?" *Id.* at 118–19. The *Taylor* court held that the testator intended to give the deceased sons' shares to their heirs, "naming the [deceased sons] for the sake of convenience, in his will, to indicate the proportion—the shares. In other words, we think the devise was not in fact to [the deceased sons], but to their heirs." *Id.* at 119.

The Plaintiffs claim that *Taylor* is on point here, i.e., that Dawdy knew her cousin Luella to be dead, yet continued to list her as a named beneficiary in the Codicils; therefore, the Plaintiffs argue, Dawdy named Luella as a beneficiary intending her heirs to take her share. We are unable to agree.

In *Taylor*, the testator's will provided in relevant part, "I give and bequeath unto my sons, George, Alexander, Joseph, John, Sydnor, and Samuel, all my real estate . . . to be equally divided among them *or their heirs.*" *Id.* at 116 (emphasis added). The *Taylor* court seized upon the term "or their heirs," concluding that such language showed the intent of the testator that his deceased sons' heirs should receive their respective fathers' shares:

Had the language been to them *and* their heirs, the word heirs would probably have been regarded as a term of limitation; but it is among them *or* their heirs, that is, among them so far as they are living, and among their heirs—those who stand in their places—so far as they are dead.

*Id.* at 119; *see also Robbins v. Springer,* 119 Ind.App. 560, 563, 88 N.E.2d 573, 575 (1949) (holding that use of the words "or their heirs," "unless a contrary intent is manifested by the context of the will itself, constitutes a substitutionary gift to the heirs of any primary beneficiary who may have preceded the testator in death.").

In the present case, Dawdy did not bequeath any share to Luella *or her heirs.* She simply made a bequest to Luella. As such, we find no support in *Taylor* for Plaintiffs' position. In fact, these cases suggest to the contrary that if Dawdy had intended Luella's children to receive their mother's share, she could have done so simply by including the words "or her heirs." *See Taylor,* 7 Ind. at 119; *Robbins,* 119 Ind.App. at 563, 88 N.E.2d at 575; *see also Semmes v. Gary Nat'l Bank,* 254 Ind. 682, 694, 262 N.E.2d 529, 537 (1970) (noting that, to avoid a lapsed bequest, a testator may designate to whom the gift shall go in case the primary devisee predeceases the testator). Here, the testatrix did not indicate to whom the lapsed bequest would go. Under the general rule, the lapsed bequest would then go to the remaining residuary beneficiaries. *See Graham,* 454 N.E.2d at 873.

█ The Plaintiffs argue, however, that the fact that Dawdy executed two codicils after Luella's death, both of which continued to list Luella as a beneficiary, creates an ambiguity which permits the consideration of extrinsic evidence which they claim shows that Dawdy intended Luella's share to pass to the Plaintiffs.

█ Indiana follows the "four corners rule," which states that extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are suscepti-

ble of a clear and unambiguous construction. *Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528, 532 (Ind.2006). A document is not ambiguous simply because the parties disagree about the meaning of a term. *Id.* Instead, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. *Id.* Thus, if Dawdy's will were ambiguous, we could consider extrinsic evidence.

■ However, we agree with the court in *Graham* that a will is not made ambiguous merely because beneficiaries predecease the testatrix. 454 N.E.2d at 872–73. Instead, we presume that the testatrix knew that her will would be subject to well-recognized rules of construction. *Aldred v. Sylvester,* 184 Ind. 542, 547, 111 N.E. 914, 915–16 (1916).

■ Here, we acknowledge that it is not entirely clear why Dawdy continued to include Luella in the codicils to her will even after Luella's death. However, the general rule is that a bequest to a beneficiary who predeceases the testatrix lapses. And if Dawdy had truly intended that the Plaintiffs take the share that would have gone to their mother Luella, Dawdy could have clearly so provided simply by including the phrase "or her heirs" after Luella's name or otherwise provided for a substitution. But she did not. Using the rules for the construction and interpretation of wills, Dawdy's Will and Codicils are not ambiguous, and we need not consider any extrinsic evidence.[4]

We hold that the bequest made to Luella lapsed when she predeceased Dawdy, and the share that Luella would have received should instead go to the remaining residuary beneficiaries. *See Carey v. White,* 126 Ind.App. 418, 424–25, 126 N.E.2d 255, 257

(1955) (where testator gave one-third interest of residue of his estate to three named, non-descendant beneficiaries, and one of these beneficiaries predeceased the testator, the devise to the deceased beneficiary lapsed and the remaining two residual beneficiaries each received one-half of the lapsed one-third interest, in addition to their one-third interest, for a total of one-half of the residual estate). The trial court did not err in granting summary judgment in favor of the Estate.

Affirmed.

BARNES, J., and BROWN, J., concur.

---

4. Because we have no need to resort to extrinsic evidence, we need not address the question of whether Russell's affidavit included statements made by Dawdy that are inadmissible pursuant to Indiana Code section 34–45–2–4.