Brown *et ux. v.* Harmon *et al.*

———

No. 7550.

BROWN ET UX. *v.* HARMON ET AL.

WILL.—*Descents.*—*Heirship.*— *When Widow of Testator Deemed an Heir.*—
*Limitation.*—A widow is to be deemed an heir of her deceased hus-
band as to her inheritance of his lands under the statute of descents;
but, when she claims as an heir under his will, the question whether she
is such heir or not depends upon the intention of the testator, as gath-
ered from the will alone; and where a will, after providing in terms
for such widow during her widowhood, contained the further provision :
"I also order that when my beloved wife * * * ceases to be my

widow, and my youngest children come of age, all my real estate be divided equally among all my heirs," the words "all my heirs" must be construed as meaning only the children of the testator and their descendants, and not such widow.

From the Washington Circuit Court.

*A. B. Collins*, for appellants.

*S. B. Voyles*, for appellees.

NEWCOMB, C.—The appellants were the appellees in the case of *Harmon* v. *Brown*, 58 Ind. 207. In that case it was held that Penina Brown, one of the present appellants, who had been the widow of Cutliff Harmon, and to whom the entire estate of said Cutliff had been devised, "during her widowhood," had no estate, under that provision of the will, after her marriage to William Brown, her co-defendant below.

The will of Cutliff Harmon was made in December, 1860. He died early in 1868, and his will was probated in March, of that year. His widow, Penina, enjoyed the personal and real estate under the terms of the will, and elected to take thereunder and not under the statute of descents, as the complaint states. In July, 1877, Penina ceased, by her marriage with Brown, to be the widow of Cutliff Harmon. Soon after her remarriage a suit for partition of a large amount of real estate, of which Cutliff Harmon died seized, was commenced in the Washington Circuit Court, to which Penina Brown and her husband were made parties defendants, to answer as to any interest she might claim in said lands.

After the case was remanded, pursuant to the judgment of this court above referred to, Brown and wife filed an answer in two paragraphs, the first alleging that she was the owner of the lands sought to be partitioned, filing, as an exhibit, a copy of the will of Cutliff Harmon. The second paragraph claimed one-tenth of the lands, on the ground that Penina was one of the heirs of her former husband,

and that, under the following clause of the will, she was entitled to share equally with his children and grandchildren in the lands of which he died seized. Correcting some errors of orthography and syntax, the clause of the will under which this claim is made reads thus: "I also order that, when my beloved wife, Penina, ceases to be my widow, and my youngest children come of age, all my real estate be divided equally among all my heirs." Demurrers were sustained to each paragraph of the answer, and, the appellants electing to stand by their answers, final judgment was rendered against them, and the lands were divided into nine portions, between the children and grandchildren of the testator.

Under the ruling of this court in the case between the same parties, reported in 58 Ind., *supra*, and which we are not disposed to question or reconsider, the circuit court properly sustained the demurrer to the first paragraph of the answer. Appellants' counsel claims in his argument that this answer sets up a complete defence by its averment that Penina Brown is the sole owner of the lands in controversy, and that although the answer alleges that Cutliff Harmon made a will, and a copy of it is filed as a part of the pleading, yet it can not be looked to in determining the sufficiency of the answer, because the copy was improperly filed, and its presence could neither aid nor mar the averments of the answer proper. But the complaint contained full averments as to the provisions of the will; that Penina elected to accept its provisions, and held the whole estate thereunder from the death of the testator in 1868 to her marriage, in 1877. The answer does not controvert these allegations of the complaint, or set up any title to the estate independent of the will; on the contrary, the answer evidently bases the claim of ownership on the will, and not on a title foreign to that.

The question presented by the second paragraph of appel-

lants' answer was not passed upon when the case was first here.

It is claimed for the appellants that Penina Brown is legally an heir of her former husband so far as his real estate is concerned, and entitled to share with the children in the division of such realty. In support of this view we are referred to divers decisions of this court so construing the statute of descents. The rule has been definitely settled by repeated rulings of this court, that, when a husband dies seized of lands, his surviving wife takes the share allotted to her by the statute of descents as an heir of her deceased husband. *Frantz* v. *Harrow*, 13 Ind. 507 ; *Johnson* v. *Lybrook*, 16 Ind. 473 ; *Murray* v. *Mounts*, 19 Ind. 364 ; *The State, ex rel.*, v. *Mason*, 21 Ind. 171 ; *McMakin* v. *Michaels*, 23 Ind. 462 ; *Rockhill* v. *Nelson*, 24 Ind. 422 ; *Rusing* v. *Rusing*, 25 Ind. 63 ; *Fletcher* v. *Holmes*, 32 Ind. 497 ; *May* v. *Fletcher*, 40 Ind. 575 ; *Bowen* v. *Preston*, 48 Ind. 367.

In *Fletcher* v. *Holmes*, *supra*, ELLIOTT, J., said of the heirship of a widow in such cases : "She can not, perhaps, be said to be an *heir* in the strict common-law sense of the term, by which *heir* is defined to be 'one born in lawful matrimony, who succeeds by descent, right of blood, and by act of God, to lands, tenements, or hereditaments, being an estate of inheritance.'

"The civil law recognizes several kinds of heirs. The relation of the widow, under our statute, as the recipient of real estate by descent from her husband, is very analogous to that of 'irregular heir' under the Louisiana code. * * The statute confers upon the widow the right of inheritance, and casts upon her property by descent ; and if this does not make her an heir, in a technical sense, it, at least, clothes her with the material attributes of one, and places her in that relation."

From the foregoing authorities, Penina Brown would be deemed an heir of Cutliff Harmon, if she were claiming under the statute of descents ; but as she waived her right

under the statute, and accepted the will, and now asserts title in the paragraph of answer under consideration only to the equal portion allowed to the several heirs by the will, we must seek the meaning of the word "heirs" as used in that instrument, the primary rule of construction being that the intention of the testator, as gathered from the whole will, must control. When the general term "heirs" is used in a will, it will be construed to mean child or children, if the context shows that such was the intent of the testator. *Jones* v. *Miller*, 13 Ind. 337; *Rusing* v. *Rusing*, 25 Ind. 63; *Rapp* v. *Matthias*, 35 Ind. 332.

Thus we are led to the inquiry, in what sense did the testator use the words "all my heirs," in providing for the final division of his real estate? Did he intend to include all whom the law might class as heirs in case of intestacy, or did he use the phrase in the popular acceptation as descriptive of children or the nearest of kin? We think he employed the expression in the latter sense. Prior to the statute of descents of 1852, a widow was not, in either the legal or popular understanding of the term, an heir to her husband's real estate. The first intimation we find in our reports that, by the statute, she takes lands as an heir, is in the case of *Frantz* v. *Harrow*, 13 Ind. 507, decided in December, 1859, where it was said: "The widow, if she be entitled to one-third of the land in fee, would seem to take it as heir to her husband. The law entitling her to it, declares that it shall descend to her." The other rulings above cited, which have firmly established the principle more hinted at than decided in *Frantz* v. *Harrow, supra,* were all made subsequent to the execution of Cutliff Harmon's will. Our reports show that it was some years after the date of this will before even the lawyers of this State came to fully understand that the statute placed the widow in the attitude of an heir of her deceased husband, and it may reasonably be assumed that the testator did not, in this case, use the

term "heirs" in a sense to which the popular mind had not become habituated.

2. There is no clause of the will indicating a purpose to make provision for the wife, except during her widowhood, unless it is to be found in the clause under which she makes her claim to one-tenth of the real estate. After devising all his property to his widow, "during her widowhood," the testator provided that, in case of her death before all his children came of age, the proceeds of his real estate should go to the support of his minor children. The will then re-cited certain advances, unequal in amount, that had been made to a part of his children, and provided that, at the death of his widow, all his personal property should be sold, and the proceeds so divided among all his children as to make them all equal ; that is, as we construe it, that, in dividing the proceeds of the personal property, the shares should be equalized by taking into account the advances received by certain of the children. Then follows the provision for an equal division, among all his heirs, of the real estate, after his wife, Penina, should cease to be his widow. We think the words, "all my children," in the one clause, and "all my heirs," in the other, were used by the testator in the same sense, and that he meant, by both, to describe his children. He provided for an unequal division of his personalty in order to properly charge advances to those of his children who had been thus favored, and having so provided for securing equality among his children in the distribution of his personal estate, he followed that, in the next sentence, with the clause in question, by which an equal division was directed of his real estate, at such time as his wife should cease to be his widow, and the youngest of his children should become of lawful age.

The objects of the testator's bounty seem to have been his children exclusively, after the widowhood of his wife should cease. This might terminate either by her death or

remarriage. In the former case, it is hardly supposable that the testator intended a tenth part of his real estate to be set off in her name, and there is nothing in the will indicating a purpose to place her on a footing with his children in the event of a second marriage. On the contrary, we think he meant his children and the descendants of deceased children, by the phrase "my heirs," in the clause of his will making a final disposition of his real estate, and that he had no thought of the then almost unknown but now established doctrine, that in this State a widow inherits lands as heir to her deceased husband.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and is, in all things affirmed.