Filed Nov. 13, 1884.

———————◆———————

No. 10,435.

## HIBBITS v. JACK ET AL.

WILL.—*Bequest to Wife.—Limitation.—Restraint of Marriage.—Descents.— Heirs.—Statute Construed.*—A devise of lands to the testator's wife "so long as she shall remain my widow" contains no condition in restraint of marriage, within the meaning of section 2567, R. S. 1881, but a mere limitation, and if she marry, or, not marrying, dies, the land goes to the heirs in the absence of a devise over.

STARE DECISIS.—*Overruled Cases.*—A decision of the Supreme Court afterwards overruled is not a general rule of property even as to purchases made on the faith of it before it was overruled. It is only the law of that case binding the parties to it, and those claiming under them, as to the matters involved in that suit.

From the Delaware Circuit Court.

*J. S. Buckles* and *J. W. Ryan*, for appellant.

*O. T. Boaz, W. W. Herod* and *F. Winter*, for appellees.

NIBLACK, J.—In his lifetime, and at the time of his death, as hereinafter stated, John Jack was, in addition to a consid-

erable amount of other property, both real and personal, the owner of one undivided third part of a tract of land in Delaware county, estimated to contain sixty-five acres, upon which a flouring mill and its appurtenances were situate.

On the 27th day of September, 1859, the said Jack executed and published his last will and testament, which contained, amongst others, the following provision:

" I hereby give, devise and bequeath to my beloved wife, *so long as she shall remain my widow,* all of my goods, chattels, rights, credits, moneys and effects, of every kind and character whatever, and all of my right, claim and interest of, in and to any and all real estate, wherever situated, of which I am or may be at any time seized or possessed, which may remain after payment of all my just debts."

Early in the month of October then next ensuing, Jack died, leaving his will, so executed and published, in full force, and Susan Jack, as his widow, and Emily E. Jack, since intermarried with Edward H. Valentine, Martha M. Jack, since intermarried with William L. Little, Parmelia R. Gilbert, Mary E. Wood and Florence T. Jack, since intermarried with James E. Howe, as his only children, surviving him.

The will was, in a few days thereafter, duly admitted to probate, and the widow elected to take under that instrument instead of under the statute.

The widow, also, went immediately into the possession of her late husband's one undivided third part of the mill and its appurtenances under the will, and so continued until the 16th day of July, 1874, when she sold, and, by warranty deed, conveyed said undivided third part of the mill tract of land, with the appurtenances, to Wallace Hibbits, the appellant herein, for the sum of $9,000. The sale and conveyance were made as above upon the theory that the devise of the real estate, herein above set out, was in restraint of marriage, and consequently void, and that it had, in legal effect, been so held in the case of *Spurgeon* v. *Scheible,* 43 Ind. 216, which had then but recently been decided, and that, in

consequence, she, as widow, was the owner in fee simple of the real estate devised to her by the will.

Hibbits went into possession of the property thus sold and conveyed to him, claiming to be the owner in fee simple, and so remains in possession, having in the meantime made valuable improvements thereon. The widow still survives, and has never remarried.

This was a suit by Hibbits against the widow and children of John Jack, and the surviving husbands of such children, to quiet his title to the mill property so purchased by him, alleging that the defendants, other than the widow, claim to be the owners in fee simple of such property, and that they will be entitled to succeed to, and to enter into the possession of, the same after the death of the said widow, thus casting a cloud upon his title.

It is unnecessary that we shall notice all the pleadings and the proceedings upon each particular pleading. It is sufficient to state that the defendants, other than the widow, filed a cross complaint, substantially repeating the historical facts of the case contained in the complaint, alleging that the claim of Hibbits was a cloud upon their title, demanding that their title be quieted, and making Hibbits and the widow defendants to the cross complaint. Hibbits, answering the cross complaint, averred that at the time he purchased the interest in the mill property in controversy, it had been held by this court that devises to the widow of a testator, precisely similar to the one involved in this case, conferred an estate in fee simple upon the devisee, and that this construction of such devises had been adopted by all the courts, and accepted and acted upon by all the citizens of this State; that it was consequently understood and believed by him that Susan Jack, the widow, was seized in fee simple of the real estate devised to her by her husband, and that the plaintiffs, in the cross complaint, acquiesced in that construction of their ancestor's will. Wherefore it was claimed that the plaintiffs, in the

cross complaint, were estopped from asserting any claim of title to the property in dispute.

The circuit court sustained a demurrer to this answer, and the appellant declining to plead further, final judgment was rendered against him upon the cross complaint.

This and other rulings upon the pleadings present the questions: *First.* What estate did Susan Jack take under her late husband's will? *Second.* If only an estate during widowhood, then were her co-defendants below estopped from asserting any claim of title to the property conveyed by her to the appellant?

The last clause of section 2 of the act concerning wills, approved May 31st, 1852 (2 R. S. 1876, p. 571), which has ever since been in force (R. S. 1881, section 2567), reads as follows: "A devise or bequest to a wife, with a condition in restraint of marriage, shall stand, but the condition shall be void."

Counsel for the appellant, with much ingenuity, as well as elaboration and ability, argue that the devise of real estate to Susan Jack, now before us, was in its very nature, and in its practical effect continues to be, a restraint upon marriage, notwithstanding some decisions of this court in analogous cases seemingly to the contrary, and the conclusion reached in the case of *Spurgeon* v. *Scheible, supra,* affords a precedent which ought to be followed, and which, in any event, must be considered as having entered into and become a part of the law of this case.

Whether the terms used in a devise or bequest ought to be considered words of limitation only, or really words of condition, within the meaning usually attached to that phrase, constitutes often a very difficult question for decision. For that reason many of the cases intended to illustrate the difference between words of limitation on the one hand, and words of condition on the other, are obscure, and sometimes apparently capricious and arbitrary. This results from the ever varying phraseology employed in making devises and

bequests. But when questions involving that difference arise,. the courts must decide them as best they can, having reference to established precedents and the fair meaning of the words. to be construed, when taken in connection with the other parts of the will.

As illustrative of the difference in question, Sir William Blackstone states the rule to be as follows:

" If an estate be granted to a woman during her widow-hood, or to a man until he be promoted to a benefice ; in these,. and similar cases, whenever the contingency happens, when the widow marries, or when the grantee obtain a benefice, the respective estates are absolutely determined and gone." 2 Bl. Com. 121.

And, continuing, at another place, says:

"A distinction is, however, made between a *condition in deed* and a *limitation,* which Littleton denominates also a *con-dition in law.* For, when an estate is so expressly confined and limited by the words of its creation, that it can not en-dure for any longer time than till the contingency happens upon which the estate is to fail, this is denominated a *limita-tion ;* as when land is granted to a man *so long as* he is parson of Dale, or *while* he continues unmarried, or *until* out of the rents and profits he shall have made 500*l*, and the like. In such case the estate determines as soon as the contingency happens (when he ceases to be parson, marries a wife, or has. received the 500*l*), and the next subsequent estate, which de-pends upon such determination, becomes immediately vested, without any act to be done by him who is next in expectancy. But when an estate is, strictly speaking, upon *condition in deed* (as if granted expressly *upon condition* to be void upon the payment of 40*l* by the grantor, or *so that* the grantee con-tinues unmarried, or *provided* he goes to York, etc.), the law permits it to endure beyond the time when such contingency happens, unless the grantor, or his heirs or assigns, take ad-vantage of the breach of the condition, and make either an entry or a claim in order to avoid the estate." Vol. 2, p. 155.

In 2 Bouvier's Institutes, p. 272, section 1811, the same distinction is thus illustrated: "There is a marked difference between a condition and limitation, which should be remembered. A condition is a provision respecting a future and uncertain event, on the existence or non-existence of which is made to depend, either the accomplishment, the modification, or the rescission of a contract or testamentary disposition. In such case the estate or thing is granted or given absolutely, without limitation, but the title to it is subject to be divested by the happening or not happening of an uncertain event. For example, a man may give an estate to his wife, provided she shall continue to reside on it; or he may give it to her upon condition that she shall not marry.

"The first of these conditions is lawful, and if she remove from the premises she may forfeit the estate; but the last being in restraint of marriage is void, and the wife shall take the estate unconditionally.

"When, on the contrary, the thing or estate is granted or given until an event shall have arrived, and not generally, with a liability to be defeated by the happening of the event, the estate is said to be given or granted subject to a limitation; as, if the estate is given *while*, or *as long* as, a woman shall remain a widow, or *until* she shall marry, the estate being given to her only during the time of her widowhood, and no longer, it determines by her marriage, and all her right to it is gone."

In 2 Washburn on Real Property, 4th edition, page 25, section 28, it is said: "The only general rule, perhaps, in determining whether words are words of condition or of limitation, is that, where they circumscribe the continuance of the estate, and mark the period which is to determine it, they are words of limitation; when they render the estate liable to be defeated, in case the event expressed should arise before the determination of the estate, they are words of condition."

Tiedeman on Real Property, at section 281, says: "An es-

tate upon limitation is one which is made to determine absolutely upon the happening of some future event as an estate to A., so long as she remained a widow. The technical words, generally used to create a limitation, are conjunctions relating to time, such as *during, while, so long as, until,* etc."

In 2 Jarman on Wills, 566, the rule concerning limitations is thus stated: " But a bequest during celibacy is good; for the purpose of intermediate maintenance will not be interpreted maliciously to a charge of restraining marriage. This is not a subtlety of our law only: the civil law made the same distinction. And no gift over is required to make the restriction in this form effectual."

The item of the will of Harmon, particularly considered by this court in the case of *Harmon* v. *Brown*, 58 Ind. 207, to which frequent reference has been made by counsel on both sides, was in the following words:

. "First, I give and bequeath unto my beloved wife, Penina, during her widowhood, all my real and personal estate, to be held and freely possessed and enjoyed during her widowhood."

The widow, some•years after the death of the testator, intermarried with one Brown, and the court below, in that case, held in effect that the item of the will set out contained words of condition in restraint of marriage, and gave judgment accordingly. This court reversed the judgment, holding that the words used in the item were words of limitation, and not of condition, and expressly overruled the case of *Spurgeon* v. *Scheible, supra,* to which reference has been made in so far as it seemingly recognized or established a different rule of construction. This case of *Harmon* v. *Brown, supra,* has either been cited approvingly, or expressly followed, by this court in the cases of *Coon* v. *Bean,* 69 Ind. 474; *Stilwell* v. *Knapper,* 69 Ind. 558 (35 Am. R. 240); *Brown* v. *Harmon,* 73 Ind. 412; *Tate* v. *McLain,* 74 Ind. 493; *O'Harrow* v. *Whitney,* 85 Ind. 140.

The case of *Harmon* v. *Brown, supra,* followed the construction inferentially approved in the much older case of

*Rumsey* v. *Durham*, 5 Ind. 71, to which no reference is made in *Spurgeon* v. *Scheible, supra,* and was, as it still is, supported by the prevailing, and, as it seems to us, unquestionable weight of authority. *Coppage* v. *Alexander*, 2 B. Mon. 313; *Vance* v. *Campbell*, 1 Dana, 230; *Rodgers* v. *Rodgers*, 7 Watts, 15; *Doyal* v. *Smith*, 28 Ga. 262; *Pringle* v. *Dunkley*, 14 Sm. & M. 16; *Hawkins*. v. *Skeggs*, 10 Humph. 30; *Chapin* v. *Marvin*, 12 Wend. 538; *Beekman* v. *Hudson*, 20 Wend. 53.

In the case of *O'Harrow* v. *Whitney, supra,* this court held that where a husband dies, leaving a wife and two children surviving him, having first devised his land to his wife during widowhood, and she elects to accept the provision made for her by the will, her estate is limited in duration to the period of her widowhood, and that a purchaser, through a mortgage executed by the widow after a subsequent marriage, acquires no title to any part of the land. To that doctrine this court, as has been seen, is committed by a series of cases, and in the light of the authorities herein cited, and of others to which our attention has been called, from that doctrine we ought not to, and hence can not now, recede.

Our conclusion, therefore, necessarily is, that the words used in the devise before us in this case, were words of limitation merely, and not of condition in restraint of marriage, and that, in consequence, the estate which Susan Jack took in the lands devised to her will not extend beyond the expiration of her term of widowhood.

In behalf of the position assumed by counsel for the appellant, that the decision in the case of *Spurgeon* v. *Scheible, supra,* became a rule of property, and, in that way, a part of the law of this case, they cite the following cases: *Ohio, etc., Company* v. *Debolt,* 16 How. 416; *City* v. *Lamson,* 9 Wall. 477; *Olcott* v. *Supervisors,* 16 Wall. 678; *Rowan* v. *Runnels,* 5 How. 134; *Havemeyer* v. *Iowa Co.,* 3 Wall. 294; *Thompson* v. *Lee Co.,* 3 Wall. 327; *Larned* v. *Burlington,* 4 Wall.

275; *Harris* v. *Jex*, 55 N. Y. 421 (14 Am. R. 285); *Robb* v. *Irwin*, 15 Ohio, 689, 703; and *Menges* v. *Dentler*, 33 Pa. St. 495.

But, as a careful examination will disclose, none of those cases have any practical analogy to the case at bar, resting, as does each one of them, upon an essentially different state of facts, and having reference altogether to other kinds and classes of property.

The doctrine of *stare decisis* can not be carried to the extent claimed for it in this case. The decisions of courts are not the law. They are only the evidence of the law, and this evidence is stronger or weaker according to the number and uniformity of adjudications, the unanimity or dissensions of the judges, the solidity of the reasons on which the decisions are founded, and the perspicuity and precision with which those reasons are expressed. *Hart* v. *Burnett*, 15 Cal. 530.

*Stare decisis* does not mean adherence to the last decision of a court when so to adhere would be a desertion of the ancient and established law, and the principles underlying titles to real estate must rest upon a better and more stable basis than an erroneous judgment of a court.

A single decision, never called in question, but consistently acted on and generally acquiesced in for a series of years, may constitute a rule of property. While a line or very considerable number of interrupted and conflicting decisions do not.

Courts can not, with propriety, perpetuate an erroneous decision, nor even a series of erroneous decisions, unless such decisions have become a recognized and well settled rule of property which the public interest requires shall not be disturbed. Whether a particular case or line of cases shall be overruled is always a question resting in the sound discretion of the court, to be decided with reference to the public welfare, and not to any merely private interest. *Hart* v. *Burnett, supra.*

The mere overruling of the principles announced in a

given cause does not disturb property rights which have become vested under it. What was decided by a case afterwards overruled, continues to be the law of that case, as between the parties and those claiming under them. *Hardigree* v. *Mitchum*, 51 Ala. 151; Wells Res Adjudicata and Stare Decisis, section 628.

Applying the several principles herein above enunciated to the case before us, the inference is evident that the case of *Spurgeon* v. *Scheible*, *supra*, never became either a rule of property or a precedent of binding authority in any subsequent case. The property rights of the parties to that case, and of those acquiring interests under them, remain intact, but as to all other persons a different rule of construction in similar cases has both previously and subsequently prevailed, and must still be applied.

If the appellant was in fact misled by the case of *Spurgeon* v. *Scheible*, *supra*, it is a misfortune to be most sincerely regretted, but, upon the facts stated in the pleadings, he is without remedy in this action.

The judgment is affirmed, with costs.

