AMES, ADMINISTRATOR, *v.* CONRY, ADMINISTRATRIX.

[No. 12,817. Filed November 22, 1927. Rehearing denied March 6, 1928.]

*Frank E. Osborn, Lee L. Osborn, Kenneth D. Osborn* and *Alfred J. Link,* for appellant.

*Andrew J. Hickey, Norman F. Wolfe* and *John B. Dilsworth,* for appellee.

REMY, J.—Leonidas Ames died testate survived by his widow, Martha J. Ames, who had been his childless second wife, and his son, Andrew L. Ames, who was by the court appointed administrator with the will annexed of testator's estate. Before the estate was settled, the widow died intestate, leaving as her only heir at law Bessie A. Conry, who was appointed administratrix of

her mother's estate. At the time of his death, Leonidas Ames was the owner in fee simple of sixty-nine acres of real estate and of personal property of the approximate value of $10,000.

The question presented by this appeal relates to the disposition to be made of the personal property of the estate of Leonidas Ames which remains in the hands of appellant as administrator with the will annexed, and involves the construction of the testator's will.

The only items of the will by which testator disposed of his property are Items 1 and 2, which are as follows:

"I. I bequeath to my beloved wife, Martha J. Ames the rents and profits during her natural life of the following described real estate: . . . and at her death the possession and rents and profits of said above described real estate shall revert to my heirs then in being.

"II. I hereby bequeath to my wife Martha J. Ames ten shares of the stock in the First National Bank of Michigan City, Indiana. As to the remainder of my estate, it is to go to my legal heirs then in being, share and share alike."

By Item 1, testator disposed of nineteen acres of his real estate. He gave to his wife the rents and profits thereof during her natural life, stipulating that the possession and rents and profits should at his wife's death revert to his heirs then in being. It has many times been held by courts of last resort, and is well settled, that a devise of the rents and profits of real estate is in effect a devise of the real estate for life. *Earl* v. *Rowe* (1853), 35 Me. 414; *Mays* v. *Beach* (1904), 114 Tenn. 544, 86 S. W. 713, 4 Ann. Cas. 1189; *Ryan* v. *Allen* (1887), 120 Ill. 648, 12 N. E. 65; Schouler, Wills (6th ed.) §1119. The words "shall revert to," as used in Item 1, signify "shall go to." *Johnson* v. *Askey* (1901), 190 Ill. 58, 60 N. E. 76; *Warrum* v. *White* (1909),

171 Ind. 574, 86 N. E. 959. It is clear that testator intended that the nineteen acres referred to in Item 1 should pass to his heirs in being at the time of his widow's death.

By Item 2, testator first gave to his wife ten shares of bank stock, and then disposed of the residue of his property, which, as the record shows, included fifty acres of land and personal property of the probable value of $9,000. The record further shows that testator was ninety years of age at the time of his death, and that Martha J. Ames, who had been testator's wife for more than twenty-five years, was about seventy years of age. It also appears that testator's step-daughter, Bessie Conry, was a child of four years at the time of her mother's marriage to testator, and had been reared as a member of testator's family.

The important question for determination is as to the time to which the word "then" as used in Item 2 refers. Does it refer to the time of testator's death, or to the time of the death of testator's widow? It is urged by appellant that it refers to the time of the widow's death. On the other hand, it is contended by appellee, and the trial court held, that the testator intended that the property disposed of by the residuary clause incorporated in Item 2 should go to testator's heirs who were living at the time of his death. It is conceded by appellant that if appellee is right in her contention, and the judgment of the trial court is affirmed, then, subject to the inheritance tax, the residue of the personal estate of Leonidas Ames must be divided equally between appellant and appellee. If Item 2 stood alone—if that were all of the will, no one would contend that the words "my legal heirs then in being" referred to testator's heirs in being at the time of his wife's death. Clearly, the words could refer only to testator's death. It is argued by appellant, however,

that since the words "heirs then in being," as used in the first item of the will, can, under the wording of that item, refer only to those heirs who might be in being at the time of the death of Martha J. Ames, it necessarily follows that the words "heirs then in being" as used in the second item must have the same meaning, and refer to the same time. In support of this contention, appellant asserts that it is a rule in the construction of wills that if a testator uses a given word in one part of his will with a certain meaning, it will be presumed that in using the same word in another part of his will he intended it to have the same significance. The rule referred to is not so broad. More accurately stated, the rule is that words occurring in a will more than once, and which are applied to the same subject, will be presumed to be used always in the same sense, unless a contrary intention appears from the context. *State Bank* v. *Ewing* (1861), 17 Ind. 68, 73. If it could be said that in the will under consideration, the words "heirs then in being" are in each instance applied to the same subject, a question it is not necessary to decide, it would not follow that the intention of the testator was as contended for by appellant, it appearing from the context of the will that the words are not used in the same sense. There is no apparent design to connect the two items of the will. See *Bailey* v. *Sanger* (1886), 108 Ind. 264, 267, 268, 9 N. E. 159. Besides, if Item 2 is to be construed as contended for by appellant, it must follow that the title to no part of the property thereby disposed of would have vested until the death of the widow, during which time testator's estate could not have been finally settled. It seems improbable that testator should have intended no vesting of title until the death of his wife, which might not have taken place for many years, she being twenty years younger than he. It is apparent that the rule of construction contended for by appellant is not applicable.

The suggestion that a life estate in the widow in the property disposed of by Item 2 will be implied is without merit. . Bequests and devises by implication are not favored and are allowed when no other construction is reasonable, and must be predicated on the language of the will, and not on mere conjecture. *Porter* v. *Union Trust Co.* (1915), 182 Ind. 637, 108 N. E. 117; Case note, 15 L. R. A. (N. S.) 73. It follows that the word "then" as used in Item 2 refers to the time of the testator's death.

A further contention of appellant is that the widow of Leonidas Ames was not his heir as to the personal property, and that by the use of the words "my legal heirs," he did not intend that any part of the personalty disposed of by the residuary clause of his will should go to his widow. It is true, of course, that at common law the widow was not the heir of her husband, either as to real estate or personal property. The widow's estate in dower was a marital right, not an inheritance, and personal property was, in the early days of England, cast on no one at the death of the owner; such property was seized by the king, by whom it was applied to pious purposes for the good of the soul of the deceased. We have gone a long way since then, and, instead of the old common law, we have the modern statutes of descent and distribution. It has frequently been held by the Supreme Court of this state that the real estate conferred upon a widow by statute is taken by her as heir of her husband. *State, ex rel.,* v. *Mason* (1863), 21 Ind. 171; *Fletcher* v. *Holmes* (1870), 32 Ind. 497; *May* v. *Fletcher* (1872), 40 Ind. 575; *Bowen* v. *Preston* (1874), 48 Ind. 367; *Brown* v. *Harmon* (1881), 73 Ind. 412; *Smock, Gdn.,* v. *Reichwine* (1889), 117 Ind. 194, 19 N. E. 776; *Davis* v. *Kelley* (1912), 179 Ind. 13, 16, 97 N. E. 336. This holding of the Indiana courts is not limited to cases in which the widow was the first

wife. It has been held that the land which the second or subsequent wife takes under the statute of descents is taken by her as the heir of her husband. *Hendrix* v. *McBeth* (1882), 87 Ind. 287, at bottom of page 289. In some jurisdictions the common-law definition of heir has been adopted by the courts; not so in this state. As is well stated by this court in *Rountree, Admx.,* v. *Pursell* (1895), 11 Ind. App. 522, 537, 39 N. E. 747: "At common law, an heir is one upon whom the law casts estate in lands immediately upon the death of the ancestor. Under our statute an heir is one who succeeds to the estate, both real and personal, immediately upon the death of the ancestor." Although there are some decisions of the Indiana courts in which it is stated that a widow is an heir of her husband only in a special and limited sense (*Unfried* v. *Heberer* [1878], 63 Ind. 67; *McNutt* v. *McNutt* [1889], 116 Ind. 545, 19 N. E. 115, 2 L. R. A. 372), there is no holding that the widow is not, under the statutes of descent, the recipient of real estate from her husband as his heir. We find no case where an Indiana court has had under consideration the use by a testator of the word "heirs" in the disposition of his personal property.

In the will under consideration, there is nothing to indicate that the testator intended that his widow should not be included by the words "my legal heirs." Had testator died intestate, then, under the statute (§3344 Burns 1926), the widow would have received one-half of his personal estate. If the will is to be interpreted as contended for by appellant, the widow would receive no part of the personal estate except the ten shares of bank stock; the remainder, about $9,000, would go to testator's son. In view of the fact, as shown by the record, that the widow was twenty years younger than testator, and had lived with him for twenty-five years, taking care of him in his extreme old age, it

seems incredible that he would give to her but $1,000 of his $10,000 estate in personal property. If it could be said that there is doubt as to what testator intended by the words "my legal heirs" as used in Item 2 of his will, then would be applicable the rule that in case of doubt as to the construction of a will, that construction will be preferred which gives the property to those who would have inherited it if there had been no will. *Hancock, Trustee, v. Maynard* (1920), 72 Ind. App. 661, 671, 126 N. E. 451; *Oliphant v. Pumphrey* (1923), 193 Ind. 656, 141 N. E. 517.

Frequently, in other jurisdictions, courts have had under consideration the use of the word "heirs" in a bequest. Among the well-considered cases is *Houghton v. Kendall* (1863), 7 Allen (89 Mass.) 72, in which the Supreme Court of Massachusetts held: "When the word 'heirs' is used in a gift of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distributions."

In *Swasey v. Jaques* (1887), 144 Mass. 135, 10 N. E. 758, 761, the same court held the law to be: "The word 'heirs' in itself imports succession to property by death; and as the persons who are the heirs of any one deceased are designated by law—which is now statutory law—the heirs must be either those persons who by law would succeed to the real estate, or those who would succeed to the personal estate, of the persons whose heirs they are called, if that person had died intestate; and it is said that, if the property is personal, the inference is that those persons are meant who would succeed to the personal estate if the owner had died intestate."

It has many times been held by courts of last resort, both in this country and in England, that a bequest of personal property to the "heirs" of the testator embraces those entitled to take under the statute of distribution, including the widow of testator, *Eddings v.*

*Long* (1846), 10 Ala. 203; *Freeman* v. *Knight* (1841), 37 N. C. 72; *Corbitt* v. *Corbitt* (1853), 54 N. C. 114; *Throp* v. *Throp* (1905), 69 N. J. Eq. 530, 61 Atl. 377; *Furguson* v. *Stuart* (1846), 14 Ohio 140; *Ashton's Estate* (1890), 134 Pa. 390, 19 Atl. 699; *Low* v. *Smith* (1856), 2 Jur. (N. S.) 344, 4 Week. Rep. 429; *Re Steevens* (1872), 27 L. T. (N. S.) 480, 21 Week. Rep. 119. See, also, *Mullen* v. *Reed* (1894), 64 Conn. 240, 29 Atl. 478, 42 Am. St. 174, 24 L. R. A. 664; *In re Shumway's Estate* (1916), 194 Mich. 245, 245 N. W. 595.

In harmony with the above and foregoing authorities, and in the light of the circumstances which surrounded the testator at the time he executed the will, we hold that by the words "my legal heirs," as used in the residuary clause, the testator intended to, and did, include all persons who would have taken the property under the statute of distributions, if he had died intestate. The widow being one who would have taken under the statute, she was necessarily included.

Affirmed.