

FILED

Oct 26 2020, 10:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jason M. Smith
Seymour, Indiana

ATTORNEYS FOR APPELLEE

Brian C. Hewitt
Melissa A. Wilhelm
Hewitt Law & Mediation
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roger D. Rotert,

*Appellant-Plaintiff,*

v.

Connie S. Stiles,

*Appellee-Defendant.*

October 26, 2020

Court of Appeals Case No.
20A-TR-773

Appeal from the Jackson Circuit
Court

The Honorable Richard W.
Poynter, Judge

Trial Court Cause No.
36C01-1802-TR-13

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Roger D. Rotert (Rotert), appeals the trial court's summary judgment concluding that the Trust language placing Rotert's distribution in trust if he is married at the time of his mother's death is not void as a restraint on marriage.

We reverse and remand with instructions.

# ISSUE

Rotert presents this court with two issues, one of which we find dispositive and which we restate as: Whether a genuine issue of material fact exists that language in the Trust documents, placing Rotert's distribution of his mother's estate in trust if he is married at the time of his mother's death is void as a restraint on marriage and against public policy.

# FACTS AND PROCEDURAL HISTORY

Rotert and Appellee-Defendant, Connie S. Stiles (Stiles), are siblings and the only children of Marcille Borcherding (Marcille). Marcille passed away on July 23, 2016, leaving her personal residence, personal property, and approximately 88 acres of farmland. Prior to her death, on August 25, 2009, Marcille executed the Marcille Borcherding Revocable Living Trust (Borcherding Trust), which directs the distribution of the Trust assets as follows:

> I give the personal property (not including my bank accounts or investments) that I have accumulated *after* my marriage to Arvel Borcherding, as follows: One-half (1/2) share to be divided

equally between my two children, [Rotert], in trust, and [Stiles], per stirpes, and the remaining one-half (1/2) share to be divided equally between my four step-children, David L. Borcherding, Max A. Borcherding, Jane A. Thomas, and Douglas R. Borcherding, per stirpes.

I give the rest and residue of my property as follows: to be divided equally between my two children, [Rotert], in trust, and [Stiles], per stirpes.

(Appellant's App. Vol. II, p. 37). In the Trust document, Stiles was appointed as Trustee of the Roger D. Rotert Trust (Rotert Trust) that holds Rotert's one-quarter interest in Marcille's personal property and Rotert's one-half interest in the remainder of Marcille's property. Immediately subsequent to the division provision, the Borcherding Trust created the Rotert Trust, as a sub-trust, to administer the assets distributed to Rotert in trust:

**ROGER D. ROTERT TRUST**

In the event that my son, [Rotert], is unmarried at the time of my death, I give, devise and bequeath his share of my estate to him outright and the provisions of this trust shall have no effect. However, in the event that he is married at the time of my death, this trust shall become effective, as set out below.

I give [Rotert's] share of the rest and residue of my property to my daughter, [Stiles] including insurance proceeds, as Trustee. It is my desire that [Stiles] manage this Trust. If [Stiles] is unable or unwilling to administer this Trust, I hereby appoint my grandson, Todd McKinney, to serve as Successor Trustee in her place. The Trustee shall administer the Trust for the benefit of [Rotert] with regard to use of the principal and interest of the funds in Trust.

(Appellant's App. Vol. II, p. 37).

[5] At the time of Marcille's death, Rotert was married. On January 20, 2017, Rotert was notified that a checking account for the Rotert Trust had been opened and that Rotert's share of a Certificate of Deposit had been deposited in the account. After the establishment of the Rotert Trust, Rotert and Stiles disagreed as to whether Rotert's assets must be held in trust, and on January 24, 2017, Rotert demanded that substantially all of the cash assets of the Rotert Trust be distributed to him outright. In an effort to compromise, Stiles agreed to distribute the cash held by the Rotert Trust while Rotert agreed that his share of the real estate would remain in the Rotert Trust. This compromise was memorialized in the Beneficiary's Request for Distribution and signed by Rotert. On February 8, 2017, Stiles signed and recorded a Trustee's Deed, transferring the farmland into the Rotert Trust.

[6] On February 9, 2018, Rotert filed his petition to docket the Borcherding Trust. On October 18, 2018, Rotert filed his motion for summary judgment, contending that certain language in the Rotert Trust was void under Indiana law as a restraint against marriage and seeking to declare the Trustee's Deed void for lack of Rotert's signature. On December 19, 2018, Stiles responded to Rotert's motion for summary judgment and filed a cross-motion, arguing that the language of the Rotert Trust was valid and raising estoppel based on accord and satisfaction. On January 15, 2019, the trial court conducted a hearing and, that same day, summarily entered judgment, denying Rotert's motion but granting Stiles' cross-motion. On February 14, 2020, Rotert filed a motion to

correct error, seeking a revised order based on the trial court's verbal assurance during the summary judgment hearing that Rotert would be granted additional time to respond to Stiles' cross motion, but ultimately did not permit such time. Stiles filed a response to Rotert's motion to correct error. On February 26, 2020, the trial court denied Rotert's motion, concluding that the summary judgment was a final appealable order when entered.

Rotert now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant

of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[9] We observe that, in the present case, the trial court did not enter findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id.*

## II. *Analysis*

[10] Rotert contends that the trial court erred in summarily denying his motion for summary judgment and granting Stiles' cross-motion upholding the marriage provision in the Borcherding Trust. In light of his marriage of many years prior to Marcille's death, Rotert maintains that the requirement that he is unmarried at the time of Marcille's death as a prerequisite to take his inheritance outright can only be interpreted as a restraint on marriage and therefore void as against public policy.

[11] Indiana courts have recognized the legal proposition that in construing a trust, the primary goal is to determine the settlor's intent by first looking at the plain language of the document. *In re Hanson*, 779 N.E.2d 1218, 1221 (Ind. Ct. App. 2002). If the settlor's intent is clear from the plain language of the instrument, and not against public policy, we must honor the settlor's intent. *Id.* Indeed, we have noted that the prime objective "in interpreting a trust is to determine

the intent of the settlor," which is an "age-old proposition." *Id.* We examine the trust document as a whole to determine "the plain and unambiguous purpose of the settlor" as that intent appears "within the four corners of the trust document." *Id.* Our determination of the settlor's intent based upon unambiguous trust document terms is a question of law. *Id.* Indiana's Trust Code provides that its rules of law are to be "interpreted and applied to the terms of the trust so as to implement the intent of the settlor and the purposes of the trust." Ind. Code § 30-4-1-3.

[12] As early as 1886, our supreme court in *Summit v. Yount*, 9 N.E. 582, 584 (Ind. 1886), held that a devise or bequest under a will which is dependent upon the recipient or beneficiary having refrained from marriage or having dissolved a marriage "will be regarded as *in terrorem* and void." While not set out in the Trust Code, in *In re Estate of Robertson*, 859 N.E.2d 772, 776 (Ind. Ct. App 2007), this court recognized that a similar prohibition contained in a trust instrument is void as against public policy. We held that "restraints of marriage arising in testamentary trust instruments are similarly void as against public policy" and the court will decline to carry out the intent of a grantor or settlor when that intent is against public policy. *Id.*

[13] However, Indiana's jurisprudence has distinguished a "condition" restraining marriage from a "limitation" of a bequest or devise on the basis of the recipient's marriage status. *Id.* at 777. In *Hibbits v. Jack*, 97 Ind. 570, 577 (Ind. 1884), our supreme court held that a devise of land to the testator's wife "so long as she shall remain my widow" did not contain a condition in restraint of

marriage, but rather a mere limitation. Prior to arriving at this conclusion, the court discussed the differences between conditions in restraint of marriage, which are void, and mere limitations, which are not void:

> The only general rule, perhaps, in determining whether words are words of condition or of limitation, is that, where they circumscribe the continuance of the estate, and mark the period which is to determine it, they are words of limitation; when they render the estate liable to be defeated, in case the event expressed should arise before the determination of the estate, they are words of condition.

*Id*. at 575.

[14] In *Summit*, 9 N.E. at 583-84, the supreme court concluded that a devise in which the husband willed to his wife "all [his] estate, both real and personal, as long as she remain[ed] [his] widow," involved words of limitation, not words of condition which would have been treated as a void restraint of marriage. In arriving at this conclusion, the court considered the following:

> Words of limitation mark the period which is to determine the estate; but words of condition render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arises before the determination of the estate, or completion of the period described by the limitation. The one specifies the utmost time of continuance, and the other makes some event, which, if it takes place in the course of that time, will defeat the estate.

*Id*. at 583. In reliance on *Hibbits* and *Summit*, the court held in *Thompson v. Patten*, 123 N.E. 705, 705-06 (Ind. 1919), that, the provision, stating with

respect to a devise of land to the testator's wife "to be and remain her absolute property as long as she remains my widow," was a limitation, not a condition in restraint of marriage.

[15] Subsequently, in *Stauffer v. Kessler*, 130 N.E. 651, 652 (Ind. 1921), the court again addressed the validity of a provision which stated that the defendant was to receive "real estate for and during the term of natural life; provided, however, that if the said [defendant], who is now a widower, shall marry, then such marriage shall terminate this estate." Although the court found the provision was valid upon the apparent basis that the condition was contained in a deed of conveyance rather than in a will, all parties in the case conceded that the relevant provision was a condition rather than a limitation. *Id.* at 652.

[16] The above cases demonstrate that the determination of whether a provision in restraint of marriage is a void condition or a valid limitation turns on the terms such provision intends to convey. In *Hibbits*, *Summit*, and *Thompson*, the provisions granting property rights for the period of time "as/so long as she remains my widow" were construed to be valid limitations because they were the only available reference point for purposes of determining the length of time such property rights were intended by the testator to last. Such limitations served as "measuring sticks," signaling the period of time the testator intended for the rights to last, rather than as conditions which could operate to divest a beneficiary of property upon the happening of some subsequent event. *Robertson*, 859 N.E.2d at 777.

[17]     Applying these principles in *Robertson*, this court analyzed a will provision stating that "the Trustee shall allow my husband [Robertson] [] to continue to live at said real estate as if he had been devised a life estate in said real estate, or until he remarries or allows any female companion to live with him who is not a blood relative." *Id*. at 774. Analogizing this situation to *Stauffer*, we observed that the "measuring stick" for Robertson's right to the real estate was not such period of time until he remarried or cohabited, but instead was his lifetime. *Id*. at 777. "In providing for Robertson, as beneficiary of her testamentary trust, to continue to live at [the real estate] '*as if he had been devised a life estate*,' it is apparent that the [grantor] intended Robertson's tenure at [the real estate] to last the entirely of his life, and that such tenure would subsequently be cut short if he were to remarry." *Id*. As such, we concluded that the provision was a void condition in restraint of marriage and not a valid limitation upon the term of the devise. *Id*.

[18]     Turning to the case at hand, we conclude that the provision, advising that

>         In the event that my son, [Rotert], is unmarried at the time of my death, I give, devise and bequeath his share of my estate to him outright and the provisions of this trust shall have no effect. However, in the event that he is married at the time of my death, this trust shall become effective. []

is a condition in restraint of marriage and therefore void. (Appellant's App. Vol. II, p. 37). Although Rotert is a beneficiary of his mother's estate, the nature of his inheritance turns on whether he is "unmarried at the time of [her] death." (Appellant's App. Vol. II, p. 37). Should Rotert have been unmarried

at the time of the opening of the estate, Rotert would have received his entire inheritance outright with right to devise the inheritance to his decedents or beneficiaries, whereas, in case Rotert is married at the time of his mother's passing, his entire inheritance will be placed in trust, with the remainder to Stiles' decedents. Accordingly, "unmarried at the time of [Marcille's] death" marks the event which will defeat Rotert's absolute rights to his inheritance. (Appellant's App. Vol. II, p. 37).

[19] Nevertheless, "the view has also been followed that if the dominant motive of the testator is to provide support in the event of separation or divorce, the condition to a devise is valid." *In re Estate of Owen*, 855 N.E.2d 603, 611 (Ind. Ct. App. 2006). Furthermore, it has been said that where there is a reasonable economic basis for placing a condition on a bequest or a devise that the beneficiary divorce, courts should not attempt to probe the testator's mind and determine whether in fact his or her motive was to disrupt the beneficiary's marriage. *Id*. Here, in absence of any evidence establishing a support reason or economic basis, the marriage provision simply cannot be interpreted as anything other than an encouragement for Rotert to divorce his wife of almost twenty years upon the opening of the estate and the condition operates to divest Rotert of an outright ownership of his interest in the Trust estate upon Marcille's death.

[20] In an attempt to save the void condition, Stiles contends that Rotert waived his challenge to the Rotert Trust by agreeing to the accord and satisfaction to settle the Beneficiary's Request for Distribution. The term void or void *ab initio*

means "void from the beginning" and "denotes an act or action that never had any legal existence at all because of some infirmity in the action or process." *Trook v. Lafayette Bank & Tr. Co.*, 581 N.E.2d 941, 944 (Ind. Ct. App. 1991), *trans. denied*. Accordingly, as the marriage provision never had any legal existence, the provision cannot be saved by an agreement or waiver of the parties.

[21] In a similar effort to protect the Rotert Trust, Stiles argues that even if the marriage provision is declared void, Rotert would still receive any distributions in trust pursuant to the language in the Borcherding Trust. However, this is an incorrect interpretation of the mechanism of the interlocking trusts. The Borcherding Trust specifies the specific bequests to the beneficiaries, with the added requirement that Rotert's share of the inheritance might be placed in trust. This trust provision is further clarified in the Rotert Trust which clearly advises that the Rotert Trust only exists in case Rotert is married at the time of Marcille's death. As we declared this provision to be void, the Rotert Trust did not become effective and Rotert receives his share of the inheritance outright.

[22] As there is no genuine issue of material fact that the marriage provision included in the Rotert Trust is void, we reverse the trial court's denial of summary judgment to Rotert and grant of summary judgment to Stiles. We

direct the trial court to enter summary judgment in favor of Rotert and against Stiles.[1]

# CONCLUSION

Based on the foregoing, we hold that the language in the Trust documents, placing Rotert's distribution in trust if he is married at the time of his mother's death is void as a restraint on marriage and against public policy. Therefore, we reverse the trial court's denial of Rotert's motion for summary judgment and grant of Stiles' cross-motion and direct the trial court to grant summary judgment to Rotert and deny Stiles' cross-motion.

Reversed and remanded.

Altice, J. concurs

May, J. dissents with separate opinion

---

[1] Because we reverse the summary judgment due to the void marriage provision, we will not address Rotert's second issue as to whether Rotert's due process right was violated when the trial court did not allow him to respond to Stiles' cross-motion for summary judgment.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roger D. Rotert, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Connie S. Stiles, <br> *Appellee-Defendant.* | Court of Appeals Case No. <br> 20A-TR-773 |

**May, Judge, dissenting.**

[27]  Because I would not hold the Trust language at issue is void as a restraint on marriage (or as an incentive to divorce), I respectfully dissent.

[28]  "A devise conditioned on the devisee being unmarried at the time of the testator's death is not an illegal restraint on marriage."  Restatement (Second) of Property, Don. Trans. § 6.1 (1983) (Oct. 2020 Update).  Comment c to that subsection of the Restatement explains:

> For a limitation to constitute a restraint on marriage, it must have two characteristics. First, there must be an otherwise effective present disposition of an interest in property, whether that interest be a present or a future interest. Second, the *acquisition or retention of that interest must be dependent upon the future*

*conduct* of the devisee or legatee which the disposition is designed to influence.

*Id*. (emphasis added).  Accordingly,

[i]f, by its terms, the devisee or legatee can benefit only if then unmarried, no further conduct is thereby coerced. The status is fixed; either the beneficiary meets the description set forth in the will as an unmarried person, or does not meet that description.  . . .  Under such circumstances, no prospective operation of the restraint is normally possible as the devisee or legatee has already placed the benefit beyond his or her grasp.

*Id*.

Herein, the form of Rotert's inheritance was fixed at the moment of Marcille's death.

In the event that my son, [Rotert], is unmarried *at the time of my death*, I give, devise and bequeath his share of my estate to him outright and the provisions of this trust shall have no effect. However, in the event that he is married *at the time of my death*, this trust shall become effective, as set out below.

(Appellant's App. Vol II at 37) (emphases added).  By the very terms of that devise, any action Rotert might take with regard to his marriage after the opening of the estate would be inconsequential to the form of his inheritance. Thus, the provision cannot be said to encourage or discourage any behavior from Rotert in a manner that could violate public policy regarding marriage. *See* Restatement (Second) of Property, Don. Trans. § 6.1 (1983) (Oct. 2020 Update) ("A devise conditioned on the devisee being unmarried at the time of

the testator's death is not an illegal restraint on marriage."). *And cf. Estate of Owen*, 855 N.E.2d at 611-12 (invalidating as condition encouraging divorce a *perpetual* rental restriction conditioned on daughter not being married to her husband at whatever time in the future that she wished to rent). I, therefore, cannot agree with the Majority that this Trust provision "simply cannot be interpreted as anything other than an encouragement for Rotert to divorce his wife of almost twenty years upon the opening of the estate . . . ."[2] *Slip op.* at 11.

[30] I would hold instead that the devise is enforceable as written in accordance with *Dickey v. Citizens' State Bank of Fairmount*, 180 N.E. 36, 98 Ind. App. 58 (1932). There, a father's will gave a life estate in real property to his wife and a remainder in fee simple to his son "if [the son] shall be living and shall have married and is at that time living with his said wife[.]" *Id.* at 37, 98 Ind. App. at 60. If son had not married at the time of his mother's death, then the land was to be sold and the proceeds divided between three charities. *Id.* The son

---

[2] Nor can I concur with the Majority's holding based on there being an "absence of any evidence establishing a support reason or economic basis" for this testamentary provision, *slip op.* at 11, because that statement contradicts the Record before us. Stiles designated evidence indicating Marcille wished Rotert's portion to go into trust if he was married so that, if he were to divorce after Marcille died, the assets in the Trust would not be transferred outside the family. (*See*, *e.g.*, Appellant's App. Vol. II at 75-83, 95-105.) The two currently undisputed facts – that Marcille's assets include eighty-eight acres of farmland and that Rotert had no children who might inherit the family farm – demonstrate to me a perfectly valid economic basis for keeping Rotert's share of the farmland in trust. Thus, if the economic basis needed to be considered, we would need to reverse and remand for Rotert to have an opportunity to designate evidence of his own, and then the trial court may need to hold a trial to evaluate that evidence.

Nevertheless, I do not believe we need to reverse and remand for Rotert to designate evidence or for a trial, because I would hold this Trust provision is valid on its face without regard to the specific economic circumstances.

challenged the will provision, claiming it was against public policy as a restraint or inducement to marriage. The Appellate Court of Indiana, sitting *en banc*, held:

> We believe that the testator had none other than the kindest of motives in making such a will, and that his action was thoughtful and commendable. It is apparent that there was no restraint to marriage, and as to compulsion or inducement we cannot say that such existed. It is our opinion that the will contains nothing repugnant to or against public policy.

*Id*. at 37-38, 98 Ind. App. at 63.

In accordance with the Restatement and *Dickey*, I would uphold the Trust provision and, therefore, I dissent from the Majority's reversal of the trial court's judgment.